OPINION OF THE COURT
Martin Marcus, J.
In this case, the People lost touch with the complaining witness, who — unknown to them — had been incarcerated on another matter and had at some point decided no longer to cooperate voluntarily in the defendant’s prosecution. Relying on the fact that when they belatedly initiated a search for her, *401 they were able to produce her as a witness, they argue that they were ready for trial before the search began. For the reasons set forth below, I find that even after an initial and bona fide statement of readiness, the People are not entitled to continue to state ready when they have reason to believe that they have lost touch with their complaining witness and fail to take prompt steps to determine whether they are able to produce the witness for trial.
In this case the defendant brought a speedy trial motion pursuant to subdivisions (1) and (2) of CPL 30.30. In a decision dated February 26, 1996, relying on a representation that the complaining witness "was always available to the People”, I determined that only 69 days of delay were chargeable to the People, and I denied the demands for immediate release and for dismissal of his indictment. On April 30, 1996, however, I granted a motion to reconsider this decision, and ordered that a hearing be held to determine whether additional periods of delay must be charged to the People. At that hearing, which was conducted on June 6, 1996, the only witness was the Assistant District Attorney assigned to the prosecution of the case (the assigned assistant). On June 21, 1996, based upon the evidence adduced at the hearing, and based upon the transcripts of prior proceedings, I found that the People must be charged with more than 90 days’ delay, and, accordingly, I ordered the defendant’s immediate release from custody pursuant to CPL 30.30 (2). For the reasons set forth below, I now find that the period of delay chargeable to the People also exceeds the six months (in this case, 184 days) permitted by CPL 30.30 (1), and that the defendant’s motion to dismiss the indictment against him must be granted.
The defendant argues, as he has throughout the pendency of his motion, that the entire period of time since August of 1994, when the felony complaint in this case was filed, is chargeable to the People. Specifically, he insists that because the People did not have a correct address for the complainant, Sonia Segarro, they never had the means to produce her as a witness and were thus never ready for trial.
The defendant’s argument goes too far. While the assigned assistant had never met Ms. Segarro, and did not have Ms. Segarro’s correct address, she was in fact in communication with Ms. Segarro until early March of 1995, was able to contact Ms. Segarro when necessary, and had a legitimate basis for announcing the People’s readiness. Specifically, when she wished to communicate with Ms. Segarro, she would call one of the *402 "contact numbers” Ms. Segarro had given her, and leave a message for Ms. Segarro to return her call. And when she left such messages for Ms. Segarro at the end of September 1994, the middle of November 1994, and a short time before March 2, 1995, Ms. Segarro, in fact returned her call within a day or two.
Based on these facts, I find that the People’s declarations of readiness on and before March 2, 1995, were bona fide. (People v England, 84 NY2d 1, 2 [1994]; People v Kendzia, 64 NY2d 331, 337 [1985]; People v Robinson, 171 AD2d 475, 477 [1st Dept 1991]; People v Tavarez, 147 AD2d 355, 356 [1st Dept 1989].) Accordingly, as I held originally, the People were responsible for only 24 days of delay as of the adjournment ordered on March 2, 1995.[1]
Thereafter, however, events occurred which should have made clear to the People that their ability to produce Ms. Segarro as a witness had, at the very least, been seriously impaired. Although in her responses to the defendant’s speedy trial motion and to his motion for reconsideration, the assigned assistant claimed that the complaining witness "was always available to the People”, it is evident from the hearing that soon after March 2, 1995, the People lost contact with her. Specifically, when the assigned assistant spoke with Ms. Segarro shortly before March 2, 1995, she made an appointment for Ms. Segarro to come to her office on a specific day sometime in the following two weeks. However, Ms. Segarro did not keep the appointment, and did not contact the assigned assistant either to explain why she missed the appointment or to reschedule it. Nevertheless, the assigned assistant did not try to contact Ms. Segarro for more than a month thereafter.
In the interim, the case was further adjourned because the defendant was on trial in New York County on another case. When the case appeared on the calendar again on April 13, 1995, the People requested an adjournment of one week because the assigned assistant was on trial. After the defendant refused to consent to a longer adjournment, I adjourned the case to April 20, 1995. Adding these 7 days to those previously chargeable to the People brings the total to 31 days.
The complainant was arrested in New York County on April 19, 1995, and has been incarcerated ever since. On April 20, *403 1995, unaware of the complainant’s arrest, the People requested an adjournment of 18 days, to May 8, 1995, because the assigned assistant was on trial in another case, and would thereafter be on vacation. I adjourned the case beyond the date the People requested, to June 15, 1995. Defense counsel merely stated, "That’s fine.”
The assigned assistant testified that sometime before April 25,1995, she called one of the complainant’s "contact numbers” and spoke with one of the complainant’s relatives. The relative did not inform her of Ms. Segarro’s incarceration, and the assigned assistant left a message with the relative for Ms. Segarro to call her. Ms. Segarro did not do so. On April 25, 1995, although Ms. Segarro had failed to keep their scheduled appointment in early March, and had not responded to her latest message, the assigned assistant filed a statement of readiness.
Sometime after April 25, 1995, the assigned assistant mailed a subpoena to Ms. Segarro at the address she had previously used for corresponding with the complainant. The subpoena directed Ms. Segarro to appear at the proceeding scheduled for June 15, 1995. In anticipation of that proceeding, the assigned assistant called two of Ms. Segarro’s "contact numbers” and left messages for Ms. Segarro. Again Ms. Segarro did not return her calls, and on June 15, 1995, she failed to appear.
On June 15, a Thursday, the assigned assistant requested an adjournment of two days, which, because of the ensuing weekend, would result in a delay of four days, until June 19, 1995. I instructed the People to file a notice of readiness when they were, in fact, ready, and adjourned the case to July 20, 1995, with the understanding that the remainder of the adjournment after the notice was filed would be at the defendant’s request. The People did not file a notice of readiness at any time between June 15 and July 20.
Before July 20, 1995, in an effort to reach Ms. Segarro, the assigned assistant called several of the "contact numbers” and spoke to relatives of the complainant, who claimed that Ms. Segarro was out of State caring for a sick relative and who refused to supply the assigned assistant with additional information or means to reach the complainant. On or about July 7, 1995, the assigned assistant called the home of Ms. Segarro’s mother-in-law and spoke with Ms. Segarro’s son. He, too, told her that Ms. Segarro was out of State taking care of a sick relative and refused to give her any information concerning where his mother was, how the assigned assistant could contact her, or when Ms. Segarro would return.
*404 On Thursday, July 20, 1995, the prosecutor who appeared for the People announced that the assigned assistant "indicates her witnesses are available. She doesn’t have them in today, but she could do the hearing Monday.” Defense counsel, however, "suggested]” an adjournment until September 28, 1995, and I adjourned the case to that date, announcing that the adjournment was at "defendant’s request.”
Apparently, no additional efforts were made to reach the complainant from the time the assigned assistant spoke to the complainant’s son in the beginning of July 1995, until September 22, 1995, when, in contemplation of the proceedings set for September 28, 1995, the assigned assistant requested that a detective investigator attempt to locate the complainant. When he, too, called the "contact numbers” and left messages for the complainant, Ms. Segarro returned his call. As a result of their conversation, Ms. Segarro finally called the assigned assistant, either on September 25 or September 26,1995.
In her conversation with the assigned assistant, Ms. Segarro said she was no longer interested in continuing the prosecution of the case, that she would not come to court voluntarily, and that the assigned assistant would have to do whatever she thought was necessary in order to secure her presence. She did not tell the assigned assistant that she was incarcerated, and the assigned assistant and the detective investigator still did not know the complainant’s whereabouts.
On September 28, 1995, the assigned assistant requested an adjournment of one week in order to obtain a material witness order to secure the complainant’s presence. The order was signed on October 2, 1995. On October 4, 1995, the assigned assistant learned for the first time that- the complainant was incarcerated and had been in jail for nearly six months. On October 5, 1995, the People requested another one-week adjournment to have the complainant produced. Within a few days, the assigned assistant and the complainant met in the prosecutor’s office, where Ms. Segarro was brought from Rikers Island. On October 12, 1995, the defendant requested an adjournment to file this motion.
The evidence adduced at the hearing establishes that while the People had an adequate basis upon which to state their readiness on March 2, 1995, by April 25, 1995, when they filed their notice of readiness, they could no longer in good faith do so. As the Court of Appeals has held, the People’s obligation to be ready is satisfied when they communicate their readiness on the record and they are in fact ready to proceed *405 at the time of their communication. Readiness requires that the People be able to produce the complainant as a witness. (People v Wilson, 86 NY2d 753 [1995] [People ready for trial where they had secured complainant’s cooperation for retrial].) Where, however, the People are unable to produce the complainant (see, e.g., People v Cole, 73 NY2d 957, 958 [1989]), their statement of readiness is "an empty declaration, insufficient to satisfy CPL 30.30.” (People v England, 84 NY2d 1, 5, supra). Moreover, while a request by the People for an adjournment will not necessarily invalidate a prior and otherwise proper declaration of readiness (People v Anderson, 66 NY2d 529 [1985]), if subsequent events demonstrate that the People were not ready when they stated they were, the earlier declaration of readiness is invalid. (Supra; see also, People v Cole, supra.)
As the People point out, they "are not required on each adjourned date to contact their witness.” (People v Robinson, 171 AD2d 475, 477, supra.) The People’s argument, however, goes much further. In essence, they contend that the investigation they eventually undertook in September and October 1995 need not have been begun until the eve of trial, and that because when the investigation was conducted, it led to the discovery of the complainant’s whereabouts and her production in the courthouse, their earlier statements of readiness were genuine.
Obviously, if the People had known that the complainant was incarcerated, in order for them to declare and maintain their readiness for trial they need not have produced her in the courthouse every time the case was on the calendar. As in People v Robinson (171 AD2d 475, 477, supra), such a requirement would be both impracticable and "unduly burdensome and vexing to the witnesses.” Here, however, because Ms. Segarro had failed to keep a scheduled appointment well more than a month before the statement of readiness on April 25, 1995, and had thereafter failed to respond to a message left for her, the prosecutor could no longer state in good faith that "the People [were] able to present their case and do so immediately.” (Supra.)
In Robinson (supra), the First Department upheld statements of readiness which the prosecutor had made based upon confirmation the prosecutor had received from the complainant’s family that the complainant was in the area and was still interested in participating in the prosecution, and based upon information that he was still employed at the place of business *406 known to the prosecutor. In this case, when the assigned assistant announced the People’s readiness on April 25, 1995, she had no confirmation either that she could still find Ms. Segarro or that Ms. Segarro was still interested in the prosecution. To the contrary, given the missed appointment and Ms. Segarro’s failure to respond to the assigned assistant’s message, the assigned assistant had reason to doubt both. In such circumstances, a genuine statement of readiness required more than a generalized hope that, whenever they were finally called upon to do so, they could find Ms. Segarro and produce her to testify. Moreover, subsequent events confirmed that when they announced their readiness on April 25, 1995, their hope was unjustified, that they had no information concerning her true whereabouts, would not soon hear from her if they again called any of her "contact numbers,” and erroneously assumed that she still intended to assist in the defendant’s prosecution.
Thus, the People’s statement of readiness on April 25, 1995, was "insufficient to stop the running of the speedy trial clock”. (People v England, 84 NY2d 1, 4, supra.) For this reason, the entire period of the adjournment from April 20 to June 15, 1995, or 56 days, is chargeable to them. To that point, the delay chargeable to the People totaled 87 days.
The period from June 15, 1995, to July 20, 1995, is also chargeable to the People, since, although asked by the court to file a notice of readiness when they were in a position to do so, they did not file such a notice at any time during that period, and could not in good faith have done so. This further delay of 35 days brings the total to 122 days.
On July 20, 1995, when the People requested a four-day adjournment for the hearings, they had still not filed a notice of readiness, and — still unaware of Ms. Segarro’s whereabouts — could not have produced her as a witness. Although defense counsel "suggest[ed]” an adjournment to September 28, 1995, his suggestion cannot be treated as a request for, or a consent to, a two-month adjournment. In order to relieve the People of their obligation to be ready, "consent to an adjournment must be clearly expressed by the defendant or defense counsel”. (People v Liotta, 79 NY2d 841, 843 [1992].) Admittedly, at the time of the adjournment I characterized defense counsel’s suggestion not merely as a consent to, but as a request for, an adjournment. However, the suggestion was made only after the People had filed their illusory statement of readiness on April 25, 1995, and only after they had erroneously informed defense counsel and the court on July 20 that the as *407 signed assistant’s "witnesses [were] available.” Under such circumstances, the defendant did not meaningfully request or consent to an adjournment, since his suggestion of a date was "premised on the false impression, however innocent, created by the People, that they were ready at any time for trial.” (People v Blue, 114 Misc 2d 383, 388 [Sup Ct, Kings County 1982].)
Furthermore, throughout the period from July 20 to September 28, 1995, the People did not file a notice of readiness and remained unready. The assigned assistant did not speak with Ms. Segarro until September 25 or 26, and even then Ms. Segarro did not disclose her whereabouts and refused to make herself voluntarily available to participate in the prosecution. The People’s continued unreadiness cannot be said to have been caused by the defendant’s suggestion of a long adjournment. Nothing about his suggestion prevented the People from taking the necessary steps to find Ms. Segarro so that the People could call her as a witness whenever they were required to do so. Simply put, this further delay in the People’s readiness did not result from any action taken by the defendant.[2] (See, People v Cortes, 80 NY2d 201, 210 [1992]; People v Anderson, 66 NY2d 529, 536, supra.) Adding this period of 70 days to that chargeable to the People brings the total to 192 days.
Finally, the adjournments from September 28 to October 4, 1995, from October 4 to October 5, 1995, and from October 5 to October 12, 1995, were specifically at the People’s request, and these 14 additional days bring the total delay chargeable to the People to 206 days. Because this exceeds the 184 days permitted by CPL 30.30 (1), the indictment must be dismissed.

. For the reasons set forth in my decision of February 26, 1996, the People are chargeable with 17 days of delay between August 14 and September 13, 1994, and with 7 days from October 20 to October 27, 1994.

. The People might argue here, too, that had the defendant not suggested this adjournment, they would have begun searching for Ms. Segarro earlier, and thus the defendant’s suggestion was the cause of this substantial delay. Obviously, however, the defendant’s request did not cause the People’s unreadiness — they were not ready long before the suggestion was made. Moreover, if the People had not led the defendant to believe that they knew where Ms. Segarro was and that they could produce her for trial, defense counsel would not have "suggested]” the adjournment.