OPINION OF THE COURT
Eileen A. Rakower, J.
Defendant is charged with torturing and injuring animals, *339 Agriculture and Markets Law § 353, a class A misdemeanor. Defendant moves pursuant to CPL 170.30 (1) (e) and 30.30 to dismiss the misdemeanor information for the People’s failure to provide him with a speedy trial. CPL 30.30 (1) (b) requires the dismissal of a Criminal Court complaint charging a class A misdemeanor where the People are not ready for trial within 90 days of the commencement of the criminal action.
The parties are in agreement that the following time periods are includable for purposes of calculating speedy trial time: 34 days (Aug. 5, 1997-Sept. 8, 1997); 14 days (June 25, 1998-July 9, 1998 [July 9, 1998-July 30, 1998 is excludable pursuant to CPL 30.30 (4) (b)]); and 4 days (July 30, 1998-Aug. 3, 1998). Indeed, the court finds these three time periods are chargeable to the People, a total of 52 days.
There are two adjournments in dispute. The first is December 8, 1997 to January 14, 1998 (37 days). The People contend that although they answered not ready on December 8, 1997, this was postreadiness delay for which the People should be charged only through December 22, 1997 (14 days) — the adjourn date they requested. Unlike prereadiness delay, postreadiness delay may be charged to the People only to the extent of the delay they actually cause (People v Cortes, 80 NY2d 201, 210; People v Anderson, 66 NY2d 529, 536; People v Dushain, 239 AD2d 151).
The second is January 14, 1998 to January 16, 1998 (2 days). The People answered not ready on January 14, 1998 because a necessary witness, a police officer, had to attend the funeral of another officer who was killed in the line of duty. The People contend that their inability to go forward on January 14, 1998 because of the unavailability of the police officer was an exceptional circumstance within the meaning of CPL 30.30 (4) (g), and that those two days should be excluded.
The court has reviewed the minutes of three calendar appearances prior to December 8, 1997, where the People asserted their readiness on the record: June 17, 1997 (The Court: “On for hearing. Are the People ready?” The People: “One moment — yes, People are ready.” The Court: “Have you seen your client?” Defense Counsel: “No I haven’t. Can you stay the warrant?” The Court: “Stayed it last time. Warrant Ordered.”); September 8, 1997 (The Court: “Are the People ready?” The People: “Yes. Officers in court.” The Court: “Sorry Officers. Let them go. Bench warrant ordered.”); and October 20, 1997 (The People: “On for hearing — People are ready.” Defense Counsel: *340 “Defense is not ready. The attorney is in night court and asks for a short date”). While the People answered “ready” on each of these occasions, the case was on the calendar for the limited purpose of conducting a Huntley-Dunaway hearing. The defendant asserts that the People’s readiness was expressed in the context of whether they were ready to proceed with the hearing. Thus, they did not answer ready for trial. The People claim that when they answered ready for the hearing, they were also ready for trial. They argue that the sole witness to testify at the hearing is the only witness necessary for the trial. Therefore, the general answer, “ready’, should not be so narrowly interpreted as to intimate a failure to answer ready for trial.
The Court of Appeals in People v Chavis (91 NY2d 500), in determining a speedy trial motion, found that being ready for a pretrial suppression hearing is distinguishable from being ready for trial. “A pretrial suppression hearing is not the equivalent of a trial and the two serve entirely different purposes [citation omitted]. A hearing usually determines narrow issues of the admissibility of evidence at the subsequent trial and does not involve the same witnesses as will be used at trial. Indeed, more often than not, the complainant — an essential witness at trial — is not a necessary witness at a pretrial Huntley hearing” (People v Chavis, at 505).
In the instant case, the court, through a Judicial Hearing Officer (JHO), conducted a pretrial hearing to determine the admissibility of defendant’s statement to police on the date of the alleged incident (the Huntley hearing, People v Huntley, 15 NY2d 72 [1965]; Miranda v Arizona, 384 US 436 [1966]). While this is a pretrial hearing with a narrow purpose, the scope of the hearing was expanded at the request of the defendant to include the events which gave rise to the arrest of the defendant. The court had to determine whether the police had probable cause to detain the defendant (the Dunaway aspect of the hearing, Dunaway v New York, 442 US 200 [1979]). The court has reviewed the hearing minutes, and, in fact, the testimony of the sole witness at the pretrial suppression hearing (Police Officer James Sommer — who signed the first-party complaint) did establish a prima facie case of torturing and injuring animals.[1] In this case, being ready for the pretrial hearing was indeed the equivalent of being ready for trial.
*341 The court practice of inquiring about hearing readiness, and the People’s answering ready for hearing without addressing trial readiness, has emerged from the manner in which cases proceed to hearings and trial in New York County Criminal Court. Pretrial hearings are conducted by Judicial Hearing Officers whose recommendations must then be reviewed by a Judge prior to any trial.[2] The colloquy between the court and the parties is limited to the issue of whether the case can move forward to the scheduled hearing. Any discussion of trial readiness is largely irrelevant at this juncture, because a trial cannot take place until the hearing process is complete. Nevertheless, in light of the Court of Appeals decision in Chavis (supra), the People should be aware of their obligation to make a complete record regarding their readiness for trial.
The court finds that the People were ready for trial prior to December 8, 1997;[3] therefore, when the People answered not ready on December 8, 1997 this was postreadiness delay. The *342 People are responsible only for the time they requested, 14 days.
Finally, the court finds the two days between January 14, 1998 and January 16, 1998 are includable. The People’s inability to go forward on January 14, 1998 because their witness was attending the funeral of a fellow officer killed in the line of duty is not an exceptional circumstance within the meaning of CPL 30.30 (4) (g). While the court understands the desire of the police officer to attend the funeral of his fallen comrade, there is no indication that this officer was a close relation to the slain officer so as to excuse the People’s failure to go forward. (People v Kato, 178 AD2d 381, 382 [witness attending brother’s funeral found to be exceptional circumstance].)
The court finds 68 days chargeable to the People, still within the 90 days allowable by statute. The defendant’s motion to dismiss is denied.

. The crime of torturing and injuring animals, Agriculture and Markets Law § 353, provides in relevant part: “A person who * * * tortures or cruelly beats or unjustifiably injures, maims, mutilates or kills any animal, whether *341 wild or tame, and whether belonging to himself or to another * * * is guilty of a misdemeanor”.
At the Huntley /Dunaway hearing Police Officer James Sommer testified on direct to the following:
“Q. Officer what led you to make an arrest on this particular day?
“A. Okay, I heard yelling and screaming. I heard cursing, in substance, fuck you, if you don’t want to listen to me.
“Q. Where were you standing when you heard this?
“A. The west side of 112th street. I heard the Yelling. I originally thought it was a domestic dispute * * * I saw Mr. Lopez [stated] what he said * * * He picked up a medium-sized dog to chest level, threw the dog against the wall and repeatedly kicked the dog.” (Hearing minutes, at 4-5.)

. In New York County Criminal Court, a case does not go directly from hearing to trial. The system currently in place is to send most pretrial hearings to a JHO, pursuant to GPL 255.20 (4). The JHO presides over the proceedings and makes a recommendation regarding the limited hearing issue. This recommendation along with the hearing minutes must be transcribed by the court reporter and then reviewed by a Judge. The Judge must either adopt, modify, or reject the recommendation of the JHO. Often the reviewing Judge is served with a motion to controvert the findings of the JHO; in which case, the opposing party must be given an opportunity to respond. This entire process takes as little as one adjournment (approximately one month) or as much as several adjournments (three to four months is not uncommon). After the hearing process is complete, the case is sent to Jury Part 7, which handles all trial-ready cases. In that Part cases are directed to the next available Jury Part or adjourned until one is available.

. The court specifically rejects defendant’s argument that the People’s answer of readiness for trial is hindsight. It is true that the People cannot assert their readiness for trial in their response to the speedy trial motion and ask the court to find them ready nunc pro tune to their first answer of readiness on June 17, 1997. This court finds that the People did declare their readiness prior to December 8, 1997. Indeed, the general statement “ready” *342 was “ready” for all purposes. The court’s determination that the People were actually ready for trial prior to December 8, 1997 is based on its examination and evaluation of the events as they were contemporaneously recorded in the court papers, the Calendar Part minutes, and the transcript of the Huntley / Dunaway hearings (see, People v Chavis, supra, at 506; People v Brothers, 50 NY2d 413, 416; People v Hamilton, 46 NY2d 932, 936).