OPINION OF THE COURT
Jill Konviser, J.
Procedural Background
By indictment No. 3633/13, the defendant is charged with grand larceny in the third degree, a class D felony offense pursuant to Penal Law § 155.35 (1), and identity theft in the first degree, a class D felony offense pursuant to Penal Law § 190.80 (1). On September 30, 2013, the defendant filed a motion to dismiss the indictment on speedy trial grounds pursuant to CPL 30.30 (1) (a). On October 15, 2013, the People filed an affirmation in response, opposing the defendant’s motion. On November 8, 2013, the defendant filed a reply and on November 18, 2013, the People filed a letter in response to that reply. On November 19, 2013, the People provided the court with transcripts related to several court appearances. As a specific factual issue regarding the defendant’s representation by counsel remained unresolved after a review of the transcripts and the papers submitted by the parties, the court ordered a hearing in connection with the defendant’s motion. That hearing was held before this court on March 7, 2014. Based upon a review of the court file, the relevant transcripts, the papers filed by the parties, and the evidence presented at the hearing, the defendant’s motion is denied.
Calculation of Speedy Trial Time
This action commenced on January 23, 2013 when an accusatory instrument charging a felony offense was filed against the defendant. Pursuant to CPL 30.30 (1) (a), the People are required to be ready for trial within six months of the commencement of the criminal action. As the six-month period in which the People are required to be ready for trial is measured by the number of days in the intervening calendar months, the People are required to be ready for trial in this matter within 181 days following the commencement of the action (see People v Cortes, 80 NY2d 201 [1992]). Whether the People have satisfied this obligation is determined by computing the time elapsed between the commencement of the action and the People’s declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to *247 the result any post-readiness periods of delay that are attributable to the People and are ineligible for an exclusion (id. at 208). This court makes the following findings of fact and conclusions of law with respect to the speedy trial time incurred in this case.
January 23, 2013 to April 8, 2013: 0 days
The defendant was arraigned on January 23, 2013, and, with the People’s consent, released on her own recognizance. At the defendant’s arraignment, H. Benjamin Perez, Esq. filed a notice of appearance on her behalf, and served notice of her intent to testify before the grand jury, pursuant to CPL 190.50 (hereinafter cross grand jury notice). The case was adjourned to April 8, 2013 for grand jury action.
In the defendant’s instant speedy trial motion, she argues that as the case was adjourned for grand jury action, and the matter had not been presented to the grand jury, the People simply must be charged for this time period. The People respond, however, that as the defendant’s attorney had served cross grand jury notice at her arraignment, yet subsequently told them that he had not been retained to represent her post-arraignment, they could not have presented the case to the grand jury during this time period, in which the defendant was without counsel. They conclude, therefore, that they should not be charged with this adjournment. In response, the defendant asserts that her attorney-client relationship was never discussed with the People and she was never without counsel. In order to resolve this factual issue, the court ordered a hearing.
The CPL 30.30 Hearing
The Defendant’s Case
Hector Benjamin Perez, Esq. testified for the defendant.[1] Perez testified that the defendant contacted him in January 2013, after a detective reached out to her in connection with a criminal investigation. Perez met with the defendant on January 22, 2013, when she signed a retainer agreement.[2] According to Perez, the defendant retained him to “surrender her and arraign her” and the agreement itself references legal services only in connection with “surrender and arraignment.” Pursu *248 ant to the retainer agreement, the defendant paid “the standard price for surrender and arraignment” — $2,000. Perez acknowledged that he would not have handled the defendant’s “entire case” for only $2,000, and explained that it was his firm’s “customary business practice” to have the client sign an “initial retainer,” and then to have the client sign a second retainer once it had been determined how to “price the entire case.” According to Perez, “no client” hires him “just for arraignment,” and as “with every single client,” the defendant wanted him to “handle the entire matter.” Perez testified that he surrendered the defendant to a police precinct on January 23, 2013, and, as was “customary” at his law firm, provided the detective with a letter indicating, inter alia, that he was the defendant’s attorney.[3]
On that same day, January 23, 2013, Perez appeared in court for the defendant’s criminal court arraignment and submitted a written notice of appearance.[4] Perez testified that he also filled out a document, commonly known as a “notice to the warden,” seeking permission to speak to the defendant prior to her appearance in court.[5] Neither the notice of appearance nor the notice to the warden indicated that Perez’s representation of the defendant was for arraignment purposes only, although Perez testified that he “generally” would not include a notation of that sort on those documents. At the arraignment, Perez served cross grand jury notice on the defendant’s behalf. Perez testified that it is his practice to serve cross grand jury notice “on every felony” so that he will “know what’s happening” on the case. The defendant’s case was adjourned to April 8, 2013 for grand jury action.[6]
Perez testified that on or about March 4, 2013, he spoke to Assistant District Attorney George Camacho in relation to the case.[7] At the time of that telephone conversation, Perez acknowledged that he still had only been retained for the defendant’s surrender and arraignment, and that he had not done *249 any additional work on the defendant’s case. During the conversation, Camacho indicated that he had “questions” about the complaining witness, and inquired whether the defendant would be willing to speak to him about the case. Perez told him that he would discuss the matter with the defendant and that he would get in touch with Camacho if she was interested in doing so. Perez informed Camacho that he expected the defendant to “sign” and pay him for the remainder of the case sometime later that week. Perez testified that even though at that point he had only been retained for surrender and arraignment and had not done any additional work on the case, he, nonetheless, considered the defendant to be his client. According to Perez, Camacho never mentioned that he wanted to schedule a grand jury presentation. In fact, Perez testified that “[t]here was never any discussion about grand jury presentment at all,” as it was “clear” to him that as a result of “issues” with the complaining witness, there “wasn’t going to be any presentment to the grand jury.”
Perez testified that his March 4, 2013 conversation with Camacho was the “one time throughout this entire case” that he spoke to Camacho, and that he “probably” never spoke to Camacho again in his “entire life.” According to Perez, the only other contact that he had with the District Attorney’s office in connection with the defendant’s case was in the summer of 2013, when he received an email communication from the newly assigned Assistant District Attorney informing him that the case was being presented to the grand jury. Perez testified that although he believed that speedy trial time had elapsed by then, he did not call to alert the Assistant District Attorney to that fact, as he “figured” the Assistant District Attorney had just “made a mistake” and would “figure[ ]” it out before presenting the case to the grand jury.
Perez testified that some time after the defendant’s arraignment, the defendant called his office and made an appointment to meet with him. He met with her on March 26, 2013 and had her sign a second retainer agreement, “for the remainder of the case.”[8] Pursuant to that retainer agreement, the defendant paid “a flat rate of six thousand dollars,” for “the entire representation, up to, but not including trial.” According to Perez, there was no reason to meet with the defendant prior to March 26th, as “the case [was not] going anywhere.” Perez explained that *250 despite not having met with his client from the arraignment on January 23, 2013 until March 26, 2013, he had spoken with her prior to her arraignment and again at her arraignment, and he knew that she would not be testifying in the grand jury. Thus, if Camacho had called him and informed him that the case was being presented to the grand jury, he would have told Camacho, “go ahead,” as he knew the defendant was not going to testify.
Perez next appeared in court on the defendant’s behalf on April 8, 2013.[9] At that time, he provided the court with a new notice of appearance. Perez testified that he did not file the new notice of appearance as a result of the second retainer agreement, but rather as his office address had changed since the time of the defendant’s arraignment. According to Perez, he did not have a copy of the notice of appearance, as they are kept in the court file, and the court did not provide him with a copy.[10] Although Perez was aware on April 8, 2013 that the defendant would not be testifying in the grand jury, and, admittedly, would have told Camacho of that had he asked, Perez, nonetheless, did not so inform the court; rather, he told the court that cross grand jury notice was still in effect. The court adjourned the case to June 13, 2013 for grand jury action.[11]
Perez next appeared in court on the defendant’s behalf on June 13, 2013. Once again, he informed the court that cross grand jury notice was still in effect. As there had been no grand jury action, the case was adjourned to September 19, 2013.
On or about August 20, 2013, Perez received a certificate of readiness in the mail.[12] Perez testified that he immediately contacted the assigned Assistant District Attorney as he was “shocked” that the case had been presented to the grand jury, as he had never withdrawn cross grand jury notice, and, he *251 believed, speedy trial time had expired. Perez explained that he never withdrew cross grand jury notice in this case, as the only way to do so “is in the court,” and if he was going to withdraw, he would only do so “in the courthouse.” According to Perez, the People, therefore, violated the defendant’s CPL 190.50 rights when they presented the case to the grand jury. Nevertheless, Perez did not file a motion to dismiss the indictment on that basis, as he “never had the need” to file such a motion, as he believed that the case was “dismissible for 30.30 time,” and filing a speedy trial motion, “the simplest way of handling this situation,” was his “sole objective.” Perez subsequently received a letter notifying him that the defendant would be arraigned in Supreme Court on September 10, 2013.[13]
The People’s Case
Former Assistant District Attorney George Camacho testified for the People.[14] Camacho testified that he was assigned to the defendant’s case on January 23, 2013. At that time, he was informed by the case detective that the defendant had surrendered herself to the precinct, and that she was represented by counsel — H. Benjamin Perez — who had provided the detective with a letter to that effect. After the defendant was arraigned in criminal court, Camacho received paper work relative to the case that contained a notation that the defendant had served cross grand jury notice at arraignment. Camacho created a case folder that he then used to make notations with respect to the status of the case during its pendency.[15] He testified that it was his “standard practice” to create such a case folder in “every case.” According to Camacho, he made entries in his case folder “right after” the event that he was memorializing had taken place.
Some time in January of 2013, after the defendant’s criminal court arraignment, Camacho called Perez to ascertain whether cross grand jury notice was still in effect and whether the defendant was inclined to attend a proffer session at the District Attorney’s office. Camacho testified that he wanted to speak with the defendant and her attorney as it appeared that the de *252 fendant faced immigration consequences in connection with a plea, so he believed that she might be interested in providing information to the District Attorney’s office in exchange for a disposition that would avoid such consequences. In response, Perez told him that “he had not been retained . . . past arraignment,” and, as a result, “could not make a decision with respect to cross or with respect to [a] proffer session.” Camacho testified that Perez told him that “he planned on again meeting” with the defendant “shortly after” their conversation, and that Perez would “get back to” him after that meeting had taken place.
Having not heard back from Perez, on February 21, 2013, Camacho again called him and left a message, and made a notation in his case folder that he had done so. Camacho testified that he needed to speak to Perez as grand jury notice was still in effect and he could not present the case to the grand jury unless cross was withdrawn or Perez “produced” the defendant to testify. Perez returned Camacho’s call a few days later, but they did not speak until Camacho then returned Perez’s call. Camacho testified that the substance of this, their second conversation, was the same as their first — Perez told him that he “had not yet finalized” his representation of the defendant and, therefore, “could not make the decision with respect to cross or . . . the proffer session at that point.”
Camacho testified that he spoke to Perez on the phone for the third time on March 4, 2013. Camacho called him to inquire once more whether cross grand jury notice was in effect and whether the defendant was interested in attending a proffer session. Camacho testified that Perez’s response during this conversation was again the same — that he had been retained for arraignment purposes only and could not make a decision with respect to cross or a proffer session. Perez also informed him that he “would be meeting” with the defendant shortly and would let Camacho know whether he had been retained for the remainder of the case. With respect to this conversation, Camacho noted in his case folder, inter alia, “[defense counsel] is unsure he’s been retained for the duration of case or arraignment only. [Defense counsel] is planning on meeting [with defendant] next week and will call hack once he’s figured out situation.”
Also on March 4, 2013, Camacho made an appointment to meet with the complaining witness on March 6, 2013, and made a notation in his case folder to that effect. Additionally, Cama *253 cho discussed the case with his supervisor, as “time was ticking away” and he was “stuck in a holding pattern” with respect to presenting the case to the grand jury. His supervisor advised him to “wait and see” whether cross was being withdrawn, or whether Perez would “produce” the defendant to testify before the grand jury.
On March 6, 2013, Camacho met with the complaining witness in his office and made a notation to that effect in his case folder. Camacho testified that in addition to meeting with the complaining witness in person on this occasion, he also spoke with her over the telephone “four to five times” during the pendency of the case. She provided him with both home and cell numbers and he never had any difficulty reaching her. She is not a drug user and has no criminal record. Camacho testified that he never told Perez that the complaining witness had credibility issues, as he “never had any reason to suspect that she did.”
On April 5, 2013, Camacho again called Perez and left a message with respect to “cross and a proffer session,” as he continued to be “concerned about further delays.” Camacho made a notation in his case folder that he had left a message for Perez. Perez returned Camacho’s call either that same day or shortly thereafter. Camacho testified that the substance of this, their fourth conversation, was the same as the previous conversations — that Perez was not retained — but Camacho was left with the impression that all would be resolved either on the next court date — April 8, 2013 — or “shortly afterwards.”[16]
On April 8, 2013, the day the case was on in court, Camacho sent a “note” to the part that contained information he wanted to relay during the calendar call. The note indicated, in sum and substance, that the case had not yet been presented to the grand jury, as it was unclear whether defense counsel — Perez— “would be remaining on the case,” and, if Perez was remaining on the case, instructed the Assistant District Attorney appearing on the case to inquire whether cross grand jury notice was still in effect. Attached to the note that he received back from court was both a copy of a notice of appearance from Perez that Camacho understood to mean that Perez had “confirmed that he was on the case from this point forward,” and an indication *254 that cross grand jury notice was still in effect.[17] As a result, Camacho called Perez that same day — April 8, 2013 — and, during this, their fifth conversation, Perez confirmed for the first time that he was representing the defendant. Perez told Camacho that he was meeting with his client the following day to determine whether the defendant intended to testify before the grand jury and whether she was interested in attending a proffer session. Perez informed Camacho that he would call him after he had met with the defendant. Camacho made a notation in his case folder with respect to this April 8, 2013 telephone call, including that Perez would “speak with” the defendant “tomorrow and get back to me.”
According to Camacho, Perez never did get back to him, and so, on April 19, 2013, Camacho again called Perez, left a message, and made a notation in his case folder that he had done so.[18] That same day, April 19, 2013, Perez called back, and he and Camacho had their sixth conversation. During this conversation, Perez withdrew cross grand jury notice. Camacho memorialized that fact in his case folder, noting, in shorthand, “4/19/2013 a/a 4:30 pm: DC w/d xgjn.”[19] As Camacho was leaving the District Attorney’s office in September of 2013, the case was reassigned in June or July of that year.
Conclusions of Fact
This court fully credits the testimony of George Camacho, Esq., and does not fully credit the testimony of Hector Benjamin Perez, Esq.
Based on the testimony and documentary evidence presented at the hearing, this court concludes that Perez repeatedly informed the People from the time of the defendant’s criminal *255 court arraignment up until April 8, 2013, that he had not been retained by the defendant post-arraignment, and, therefore, the defendant was in effect without counsel during this time period.[20] The defendant’s argument to the contrary — that she was continuously represented by Perez and, therefore, never without counsel — is belied by the testimony and documentary proof, including Perez’s own testimony.
Indeed, Perez unequivocally testified that: he had been initially retained only for the defendant’s surrender and arraignment; he would never handle the entirety of the defendant’s case for the $2,000 fee included in the initial retainer agreement; he simply could not enter into a retainer agreement with the defendant for the remainder of her case until he had made a determination with respect to how much his representation would cost; during his March 4, 2013 telephone conversation with Camacho, he informed Camacho that he was waiting to be paid by the defendant; and, after the defendant’s criminal court arraignment, he performed no work on the defendant’s case at all. Furthermore, Perez’s testimony was consistent with the initial retainer agreement — introduced into evidence at the hearing by the People — that specifically references legal services for surrender and arraignment only. Thus, the foregoing evidence — in and of itself — unequivocally demonstrates that the defendant was without counsel during this time period. Nevertheless, the court’s inquiry does not end there, as, despite this conclusive evidence, Perez asks the court to conclude that he represented the defendant throughout the entirety of the case. The court simply can not reach that conclusion based on the remainder of the evidence presented at the hearing.
Perez also unequivocally testified that: he had but one telephone conversation with Camacho, and “probably” never spoke to Camacho again in his “entire life”; during that single conversation with Camacho, Camacho did not inquire about cross grand jury notice, as there was never “any discussion about grand jury presentment at all”; had Camacho inquired about cross grand jury notice, he would have told him to “go ahead” and present the case to the grand jury as the defendant was not going to testify; he never withdrew cross grand jury notice; if he was going to withdraw cross grand jury notice, he *256 would do so only “in the courthouse” on the record, and not during a telephone call with Camacho, as withdrawing cross grand jury notice in court is the only way to so withdraw; and it was “clear” to him that as a result of “issues” with the complaining witness, there “wasn’t going to be any presentment to the grand jury.” Perez’s testimony, however, was directly contradicted by the credible testimony and convincing documentary evidence presented by the People at the hearing.
To begin, Camacho testified that he had at least six different telephone conversations with Perez during the pendency of the case. During each of those six telephone conversations, Camacho not only discussed presenting the case to the grand jury, but specifically inquired whether the defendant planned to testify in the grand jury. According to Camacho, Perez responded each time that he was not retained and, therefore, was unable to make any decision in that regard on the defendant’s behalf. Additionally, Camacho testified that Perez withdrew cross grand jury notice during a telephone conversation that took place on April 19, 2013. Further, Camacho testified that he never informed Perez that the complaining witness had credibility issues, as he “never had any reason to suspect that she did.” According to Camacho, the complaining witness provided him with two different telephone numbers, he never had trouble reaching her, he spoke to her four or five different times, and she met with him in his office when he requested that she do so. Camacho added that she is not a drug user and has no criminal record.
Camacho’s clear and detailed testimony with respect to the number and nature of his conversations with Perez was corroborated, in large part, by the other evidence at the hearing. For example, in his case folder, Camacho memorialized three of the six telephone conversations that he testified had taken place with Perez. Specifically, with respect to a telephone conversation that took place on March 4, 2013, a conversation Perez denied having, Camacho noted, inter alia, that he had spoken to Perez, and that Perez was “unsure” whether he had been retained for the “duration” of the case or “for arraignment only,” that he was “planning on meeting” with the defendant the following week, and that he would call Camacho once he had done so. Similarly, with respect to a telephone conversation on April 8, 2013, a conversation Perez also denied having, Camacho noted in his case folder, inter alia, that Perez was scheduled to “speak” with the defendant the following day and *257 would subsequently “get back” to him. Also as corroborated by the case folder, Camacho memorialized a conversation that he had with Perez on April 19, 2013, during which Perez withdrew cross grand jury notice. To that end, Camacho wrote in his case folder, in shorthand, “DC w/d xgjn.”
So, too, Camacho’s testimony with respect to his repeated conversations with Perez was corroborated, in large part, by the note he sent to the part on April 8, 2013, containing information relative to the status of the case. Indeed, on the note, Camacho informed the court that Perez was “not even sure he would be remaining on the case.” Camacho also asked the court to inquire of whomever appeared on the defendant’s behalf whether cross grand jury notice was still in effect.
Similarly, Camacho’s testimony with respect to the number and nature of his interactions with the complaining witness was corroborated, in large part, by the other evidence at the hearing. For example, in his case folder, Camacho noted that on March 4, 2013 he called the complaining witness and made an appointment to meet with her on March 6, 2013. And, on March 6, 2013, Camacho noted that he had met with the complaining witness and discussed the facts of the case with her.
Conclusions of Law
It is clear that the consequences of Perez’s repeated assertions and delays in ascertaining whether he would be continuing to represent the defendant post-arraignment placed the People in an untenable position — between the proverbial rock and a hard place — forced either to violate her CPL 190.50 rights or risk dismissal of the indictment based on speedy trial grounds.[21] The People, who reasonably relied on Perez’s assurances that he would ascertain the defendant’s intentions with respect to testifying before the grand jury, simply can not be held responsible for this conundrum — created by the defendant and subsequently exploited by her. While the defendant now faults the People for not taking some action, such as seeking the court’s intervention, Perez undoubtedly lulled them into inaction. And now, having scrupulously guarded the defendant’s CPL 190.50 rights, the People are, nonetheless, faulted by her for violating the speedy trial statute.
CPL 30.30 (4) sets forth a number of exclusions pertaining to speedy trial time. As is relevant here, CPL 30.30 (4) (f) excludes *258 any period of delay “during which the defendant is without counsel through no fault of the court.”[22] The courts have applied this exclusion when an attorney fails to appear in court (see People v Mannino, 306 AD2d 157 [1st Dept 2003]; People v Reed, 19 AD3d 312 [1st Dept 2005]), when a defendant is unrepresented and requests an adjournment to retain an attorney (see People v Drake, 205 AD2d 996 [3d Dept 1994]), and when an attorney is assigned by the court and the case is adjourned for that attorney’s appearance (see People v Rickard, 71 AD3d 1420 [4th Dept 2010]; People v Middlemiss, 198 AD2d 755 [3d Dept 1993]). Although the facts and circumstances present in the instant matter are different from those previously analyzed by the courts of this state, the result is, nevertheless, the same. Here, Perez’s recurrent disavowal of his role as the defendant’s attorney, and purported inability to make decisions on her behalf, did more than just present the People with a Hobson’s choice — it rendered the defendant without counsel. To hold otherwise would allow a defendant to orchestrate a dismissal of the charges based neither on the merits nor the law, but rather on the art of avoidance. And, of course, the People must not be charged with a time period during which a defendant is without counsel. Accordingly, this time period is excluded.
April 8, 2013 to June 13, 2013: 66 days
On April 8, 2013, the defendant appeared in Part F. Perez filed the second notice of appearance on the defendant’s behalf, and confirmed that CPL 190.50 notice was still in effect. As the defendant had not yet been indicted, the case was adjourned to June 13, 2013 for grand jury action. As the People concede, this time period is charged to them.
June 13, 2013 to September 19, 2013: 64 days
On June 13, 2013, the People indicated that the defendant had not yet been indicted, and the case was adjourned to September 19, 2013 for grand jury action.
The defendant was subsequently indicted on August 2, 2013, and, on August 16, 2013, the People filed a certificate of readiness. The case was advanced to September 10, 2013 for Supreme Court arraignment.
*259 The People are only charged with a portion of this time, from June 13, 2013, until they filed the certificate of readiness on August 16, 2013.
September 10, 2013 to October 1, 2013: 0 days
The defendant was arraigned in Supreme Court on September 10, 2013. At that time, the defendant informed the court that she intended to file a CPL 30.30 motion, and requested that the court set a motion schedule. The case was adjourned to October 1, 2013 for the defendant’s motion. This time period is excluded as adjournments related to speedy trial motions are not charged to the People (see People v Shannon, 143 AD2d 572 [1st Dept 1988]).
October 1, 2013 to October 15, 2013: 0 days
The defendant filed the instant motion on September 30, 2013, and the case was adjourned to October 15, 2013 for the People’s response. Again, this time period is excluded, as adjournments related to speedy trial motions are not charged to the People (see People v Shannon, 143 AD2d at 573).
October 15, 2013 to November 19, 2013: 0 days
On October 15, 2013, the People filed their response to the defendant’s motion. The case was adjourned to November 19, 2013 for decision. The time during which a motion is under consideration by the court is not chargeable to the People (see People v Vidal, 180 AD2d 447 [1st Dept 1992]). Accordingly, this time period is excluded.
November 19, 2013 to December 16, 2013: 0 days
On November 19, 2013, as the court had not yet rendered a decision, the case was adjourned to December 16, 2013 for decision. Again, the time during which a motion is under consideration by the court is not chargeable to the People {see People v Vidal, 180 AD2d at 447). Accordingly, this time period is excluded.
December 16, 2013 to January 29, 2014: 0 days
On December 16, 2013, the court informed the parties that it was not yet prepared to render a decision as it would be ordering a hearing in this matter. The case was adjourned, on consent of the parties, to January 28, 2014 for a possible disposition. If no disposition was reached, the hearing was scheduled for January 29, 2014. As the defendant’s CPL 30.30 motion remained under consideration by this court {see People v Vidal, 180 AD2d at 447), and, further, as the defendant consented to the adjournment, this time period is excluded.
*260 January 29, 2014 to February 13, 2014: 0 days
On January 29, 2014, the People were not ready for the CPL 30.30 hearing and the case was adjourned to February 13, 2014 for the hearing. This time period is excluded, as adjournments related to speedy trial motions are not charged to the People (see People v Shannon, 143 AD2d at 573).
February 13, 2014 to March 7, 2014: 0 days
On February 13, 2014, the defendant indicated that she was not prepared to go forward with the hearing. The court adjourned the case to March 7, 2014 for the CPL 30.30 hearing. This time period is excluded (see People v Shannon, 143 AD2d at 573).
March 7, 2014 to April 22, 2014: 0 days
The court conducted the CPL 30.30 hearing on March 7, 2014 and the case was adjourned to April 22, 2014 for decision. The time during which a motion is under consideration by the court is not chargeable to the People (see People v Vidal, 180 AD2d at 447). Accordingly, this time period is excluded.
Conclusion
Based on the foregoing, the People are charged with 130 days of the 181 total days to which they are entitled. Accordingly, the defendant’s motion to dismiss the indictment pursuant to CPL 30.30 (1) (a) is denied.

. While Perez filed a notice of appearance at the defendant’s Supreme Court arraignment, for the purposes of the CPL 30.30 hearing, the defendant was represented by Tammy Harris, Esq., who filed a notice of appearance marked “for the purposes of the hearing only.”

. A copy of the January 22, 2013 retainer agreement was entered into evidence at the hearing as People’s exhibit 1.

. A copy of the letter was entered into evidence at the hearing as defendant’s exhibit A.

. The January 23, 2013 notice of appearance, contained in the court file, was deemed entered into evidence at the hearing as defendant’s exhibit B.

. The notice to the warden was entered into evidence at the hearing as defendant’s exhibit C.

. The transcript of the defendant’s January 23, 2013 arraignment was introduced into evidence at the hearing as defendant’s exhibit D.

. Camacho, who also testified at the hearing, has since left the District Attorney’s office.

. A copy of the March 26, 2013 retainer agreement was entered into evidence at the hearing as People’s exhibit 2.

. April 8, 2013 was the defendant’s first court appearance following her criminal court arraignment.

. Despite Perez’s testimony that he did not have a copy of the notice of appearance, a carbon copy of a notice of appearance, dated April 8, 2013, which has an address for Perez different from the one indicated on the January 23, 2013 notice of appearance, was entered into evidence at the hearing as defendant’s exhibit H. This court notes that the notice of appearance entered into evidence by the defendant matches neither the notice of appearance in the court file relative to April 8, 2013, nor the notice of appearance entered into evidence at the hearing as People’s exhibit 4 (see n 17, infra), the latter of which appears to be a carbon copy of the original contained in the court file.

. The transcript of the April 8, 2013 court appearance was entered into evidence at the hearing as defendant’s exhibit E.

. A copy of the certificate of readiness, dated August 16, 2013, was entered into evidence at the hearing as defendant’s exhibit F.

. A copy of the notice of the defendant’s Supreme Court arraignment was entered into evidence at the hearing as defendant’s exhibit G.

. Prior to Camacho’s testimony at the hearing, he met with the Assistant District Attorney handling the case and reviewed the motion papers submitted by the parties.

. The case folder created by Camacho was introduced into evidence at the hearing as People’s exhibit 3.

. Camacho testified that when he spoke to Perez on April 5, 2013, Perez did not inform him that the defendant had signed a retainer agreement with him on March 26, 2013.

. The “note” with the attached notice of appearance was introduced into evidence at the hearing as People’s exhibit 4. This court notes that the notice of appearance admitted into evidence by the People at the hearing appears to be a carbon copy of the April 8, 2013 notice of appearance contained in the court file. Although similar in content, neither matches the April 8, 2013 notice of appearance entered into evidence at the hearing as defendant’s exhibit H (see n 10, supra).

. Camacho testified that each message he left for Perez was with the same woman who answered the telephone at Perez’s office each time that he called.

. Camacho testified that the April 19th notation was the last one that he made in his case folder, as he was leaving the District Attorney’s office and the case was reassigned soon thereafter. When Camacho left the District Attorney’s office in September 2013, the case folder remained in the custody of the office, and it appeared to Camacho that the Assistant reassigned to the case had added his own notations to it.

. Although the credible evidence at the hearing made plain that the defendant retained Perez to represent her for the remainder of the case on March 26, 2013, Perez, up until April 8, 2013, did not inform the People that he had been retained post-arraignment.

. Of course, unbeknownst to the People, Perez was privy to the defendant’s decision with regard to cross grand jury notice from the very inception of the case.

. The People also argue that the adjournment at issue should be excluded pursuant to CPL 30.30 (4) (b), as it was “a continuance granted by the court at the request of, or with the consent of, the defendant or his counsel.” As there is simply no evidence to that effect, the People’s argument is rejected (see e.g. People v Liotta, 79 NY2d 841 [1992]).