People v Lesure (2025 NY Slip Op 50339(U))

[*1]

People v Lesure

2025 NY Slip Op 50339(U)

Decided on March 12, 2025

County Court, Monroe County

Morrison, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 12, 2025
County Court, Monroe County

The People of the State of New York

against
Jacob Lesure, Defendant.

Ind. No. 24-72815

For the People:
SANDRA J. DOORLEY
Monroe County District Attorney
BY: Assistant District Attorney Stephen F. Ryck
47 South Fitzhugh Street
Rochester, New York 14614
For Defendant:
JULIE CIANCA, ESQ.
Monroe County Public Defender
BY: Campbell Roth, Esq.
10 North Fitzhugh Street
Rochester, New York 14614

Caroline E. Morrison, J.

By way of Indictment 24-72815, filed on or about July 23, 2024, defendant is charged with criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and criminal possession of a weapon in the third degree ( § 265.02 [8] ). Defendant seeks dismissal of the indictment on speedy trial grounds pursuant to CPL 30.30 on the basis that the People's certificate of compliance and statement of readiness dated September 5, 2025, was invalid and thus the People have not declared readiness within the statutorily prescribed time frame. Contrary to defendant's claim, the certificate of compliance and statement of readiness was not illusory and the People are well within their time to prosecute defendant.
FINDINGS OF FACT
On February 22, 2024, defendant was taken into custody by the Rochester Police Department and arraigned on a felony complaint on February 23, 2024. The People received two zipped files of footage from body-worn camera in this matter and provided them to defendant on February 23, 2024. These recordings from multiple officers contain approximately 101 minutes of footage in 18 segments.
Officer Justin Dalton of the Rochester Police Department filled out a form alleging that on February 22, 2024, at about 8:32 p.m. at 126 Wellington Avenue in the city of Rochester:
While detained in the back of my marked patrol vehicle, the defendant did spontaneously utter 'I let off some shit, I let off some shots[.'] The defendant did so voluntarily, and without being questioned by myself or other officers. This was captured on my BWC and uploaded to Genetec.
That form was read by staff in defendant's attorney's office on February 26, 2024. The next day, at 1:59 p.m., defendant's attorney contacted the prosecutor via email because after reviewing the body-worn camera, that statement was not located. Specifically, defendant's attorney wrote, "Can you please let me know which exact file it's on?" At 4:21 p.m., the prosecutor responded that he would "take a look to see if I can find a timestamp and follow-up this evening."
The prosecutor then called Officer Dalton regarding the statement. Officer Dalton indicated to the prosecutor that he believed the statement was captured on body-worn camera, but agreed with the prosecutor that there was a possibility the footage was inaudible. Defense counsel and the prosecutor exchanged cellular telephone numbers via email and spoke regarding this issue that same night. During the phone call, the prosecutor told defense counsel that in reviewing Officer Dalton's footage, the timestamp for the statement was not located.
The prosecutor asserted that at this point in time he believed the statement was inaudible on the footage. He cited several factors for this belief, including the 30 second portions of clips without audio that precede the manual activation of the camera, background noise on the footage that obscured some speech, and the fact that, at times, defendant's speech was unintelligible.
On February 28, 2024, defendant adjourned his preliminary hearing to work out an offer. Defendant again requested an adjournment on March 6, 2024. On March 9, 2024, defense counsel reached out again to the prosecutor via email, but there was no further answer. In the intervening time, the two attorneys discussed other discovery items and potential resolutions for the case. Defendant waived time to further seek a favorable disposition of the charges from the District Attorney's Office administration. Defendant requested adjournments on April 4, 2024, May 9, 2024, and July 1, 2024.
On July 23, 2024, this indictment was filed. In the 710.30 notice attached to the indictment, the People noticed all statements made in the body-worn footage and documented by police on written investigative action reports. Defendant was arraigned before this Court on August 9, 2024, and defendant consented to the scheduling order which provided defendant an adjournment date to file motions. On September 5, 2024, the People filed a certificate of compliance and statement of readiness. Defendant's motions were filed on September 24, 2024, and the People filed a cross-motion on September 30, 2024.
On October 11, 2024, motions were not argued as defendant requested more time to attempt to obtain a further reduction offer from the District Attorney's Office. On November 15, 2024, motions were argued and the Court granted a Huntley hearing to be held January 21, 2025.
On December 9, 2024, the prosecutor consulted with the senior digital services coordinator for the District Attorney's office regarding enhancing audio on the body-worn footage to determine if defendant's alleged statement was captured on the footage.
On Friday, January 17, 2025, defendant requested an adjournment of the Huntley hearing as he had not received an answer on a further reduction offer from the District Attorney's Office administration. Given that the prosecutor had already extended a reduction offer and the amount [*2]of time that had elapsed since the first appearance in County Court, the Court indicated to the parties the hearing would remain scheduled for Tuesday, January 21, 2025. At some point on January 17, 2024, defense counsel contacted the prosecutor. The prosecutor was again informed that defense counsel was unable to locate defendant's alleged statement in the body-worn camera footage.
On the Dr. Martin Luther King, Jr. holiday, January 20, 2025, in preparation for the hearing, the prosecutor accessed a computer system in his office called Genetec. According to the prosecutor, prior to the fall of 2024, prosecutors did not have access to the Genetec system and had to instead rely on digital service coordinators employed by the District Attorney's Office to obtain body-worn footage. Upon accessing the system directly, the prosecutor obtained additional footage related to this case, including a four-minute long clip containing defendant's alleged statement, "I let off some shit, I let off some shots."
The prosecutor immediately spoke with defense counsel and informed her that there was additional body-worn footage, including the footage containing defendant's alleged statement that had been located and made accessible to defendant. Via email, defendant then sent the instant motion to the prosecutor and Court at 3:46 p.m. noting it would be filed the following day. At 9:42 p.m. that night, the People filed a supplemental certificate of conviction with the Court detailing the additional footage provided.
Prior to the commencement of the hearing on the following day, both parties addressed the delayed disclosure of the footage allegedly containing the statement that was at issue for the hearing. In fashioning a remedy pursuant to CPL 245.80, this Court considered the prejudice to defendant. Here, defendant had previously requested an adjournment of the hearing, which the Court denied. Therefore, this Court determined that the "remedy or sanction that [was] appropriate and proportionate to the prejudice suffered by the party entitled to disclosure," was preclusion of defendant's statements made to police. As such, the Huntley hearing was obviated by the Court's ruling. The matter was then adjourned to allow the People time to respond to the instant CPL 30.30 motion, which they did on February 26, 2025.

 CONCLUSIONS OF LAW
Criminal Procedure Law Section 30.30 provides that where a defendant is accused of at least one felony, as here, the People must announce their readiness for trial in the case within six months (CPL 30.30 [1] [a]). In this case, the People have 182 days to be ready for trial (see generally People v Jones, 176 AD3d 1397, 1398 [3d Dept 2019], lv denied 35 NY3d 942 [2020]). "The statutory period is calculated by 'computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion' " (People v Barnett, 158 AD3d 1279, 1280 [4th Dept 2018], lv denied 31 NY3d 1078 [2018], quoting People v Cortes, 80 NY2d 201, 208 [1992]).
The prosecution cannot announce readiness for trial for purposes of CPL 30.30 (5) until the People have filed a proper certificate of compliance (CPL 245.50 [3]; see L 2020, ch 56, § 1, pt HHH, § 1). Therefore, "absent an individualized finding of special circumstances by the court before which the charge is pending, the prosecution will not be deemed ready for trial for purposes of CPL 30.30 until it has filed a 'proper certificate' of compliance pursuant to CPL 245.50 (1)" (People v Gaskin, 214 AD3d 1353, 1354 [4th Dept 2023] citing CPL 245.50 [3]). The certificate of compliance must certify in good faith, that: (1) the People have exercised "due [*3]diligence" and made "reasonable inquiries" to "ascertain the existence" of discoverable material; and (2) they have "made available all known material and information subject to discovery" (CPL 245.50 [1]; see People v King, 216 AD3d 1400 [4th Dept 2023]).
Here, defendant does not dispute that he continued to seek adjournments for the purpose of obtaining a favorable disposition available only from the District Attorney's administration. Thus, prior to indictment, the only time chargeable to the People was the period from the filing of the initial accusatory instrument on February 22, 2024, to the preliminary hearing on February 28, 2024 (6 days). Given that defendant requested an adjournment to file motions at arraignment on the indictment, and the certificate of compliance was filed September 5, 2024, none of this time is chargeable to the People. Therefore, even if the People's readiness was illusory on September 5, 2024, the People would still be well within their 182 days with the filing of the supplemental certificate of compliance on January 20, 2025, as every adjournment post-indictment was made at defendant's request.
In any event, the certificate was not illusory. As noted by the Fourth Department, "the clear and unambiguous terms of CPL 245.50 establish that a certificate of compliance is proper where its filing is 'in good faith and reasonable under the circumstances' " (Gaskin, 214 at 1355 quoting CPL 245.50 [1]). Thus, in determining whether an initial certificate of compliance is illusory, this Court must evaluate whether the People made reasonable efforts based on the unique circumstances of each case (see People v Bay, 41 NY3d 200, 211-212 [2023]).
"A defendant making a motion pursuant to CPL 30.30 to dismiss an indictment has the initial burden of demonstrating, by sworn allegations of fact, that there has been an inexcusable delay beyond the time set forth in the statute" (People ex rel. Ferro v Brann, 197 AD3d 787, 787 [2d Dept 2021], lv denied 38 NY3d 909 [2022]). Here, through a tendicious rendering of facts, defendant made this showing. Thus, "once a defendant has shown the existence of an unexcused delay greater than . . . six months, the burden of showing that time should be excluded falls upon the People" (People v Santos, 68 NY2d 859, 861 [1986]).
The People demonstrated even if their readiness was illusory on September 5, 2024, they would still be well within their 182 days with the filing of the supplemental certificate of compliance on January 20, 2025, as every adjournment post-indictment was made at defendant's request. In any event, the certificate was not illusory.
As set forth by the Court of Appeals, "the relevant factors for assessing due diligence may vary from case to case," however, this Court "should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id. at 212). Here, the fragmented recordings originally turned over demonstrate that defendant was speaking almost the entire duration of each clip. Further, the background noise obscured speech from time to time. Moreover, defendant was labile, which affected the recording of his speech. At one point, cameras had to be turned off when defendant had to use the restroom and was transported for this purpose. While in hindsight it might feel obvious that ten words were not included in the recordings, in viewing these clips, it is not. Even defense counsel believed she was unable to particularize the speech, not that she was missing footage as demonstrated by her early requests, "Can you let me know which exact file it's on?"
Given the facts of this case, the missing material was not obvious and the prosecutor [*4]made sustained diligent efforts to recover the materials. The materials were ultimately found through the prosecutor's persistence. The original certificate of compliance was not illusory.

 CONCLUSION
Accordingly, based on the foregoing, the defendant's motion to dismiss the indictment under CPL 30.30 and 210.20 (1) (g) is DENIED.
This constitutes the Decision and Order of the Court.
Dated this 12th day of March, 2025 at Rochester, New York
HONORABLE CAROLINE E. MORRISON
COUNTY COURT JUDGE