People v Cole (2024 NY Slip Op 50839(U))

[*1]

People v Cole

2024 NY Slip Op 50839(U)

Decided on July 3, 2024

Criminal Court Of The City Of New York, Kings County

Glick, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 3, 2024
Criminal Court of the City of New York, Kings County

The People of the State of New York

against
Ronald Cole, Defendant.

Docket No. CR-041485-23KN

Prosecution: Kings County District Attorney's Office by ADA Rachel Kuper
Defendant: The Legal Aid Society by Benjamin Healy, Esq.

Joshua Glick, J.

Defendant moves for an order of dismissal on speedy trial grounds alleging that omissions in the Prosecution's automatic discovery render their Certificate of Compliance (COC) and Statement of Readiness (SOR) illusory.
The Prosecution opposes.
For the reasons explained more fully herein, Defendant's motion is DENIED.
 BACKGROUND AND PRIOR PROCEEDINGS
Defendant is charged with PL §120.00(1), Assault in the Third Degree and related charges. The case commenced with the filing of the accusatory instrument on November 11, 2023. Defendant was arraigned the following day, November 12. On January 17, 2024, the Prosecution served discovery, along with a COC and a Superseding Information. On February 14, 2024, the Prosecution served and filed a Supplemental Certificate of Compliance (SCOC) with one item of Giglio material; the SCOC states that basis for the delay is that the item did not exist at the time the COC was filed. On March 27, 2024, the case was called in Part DV1, but Defendant failed to appear, and a bench warrant was stayed. On March 29, 2024, Defendant, through counsel, sent the Prosecution a discovery conferral email. The same day, the Prosecution responded via email; they also served additional DD5s that were generated after the COC and another SCOC. On April 4, 2024, the parties appeared in Part DV1, and the Honorable Keisha Espinal ordered the Prosecution to turn over a list of discoverable materials [FN1]
. On April 30, 2024, the Prosecution spoke with a police officer involved in the investigation and confirmed that some of the materials ordered at the previous appearance do not exist. On May 3, 2024, [*2]Defendant filed the instant motion.
Defendant argues that the Prosecution's failure to disclose the following items of discovery prior to filing their COC renders it invalid: an Internal Affairs Bureau (IAB) log related to a substantiated claim against testifying witness Officer Molina; updated, unredacted Civilian Complaint Review Board (CCRB) allegation histories for all officers; unredacted impeachment materials for all officers; closing reports and other paperwork for all CCRB allegations (including those adjudicated, substantiated, or marked as "Other Possible Misconduct Notations") against testifying witness officers; impeachment material for non-testifying witnesses Officers Neubert, Glemaud, and Elshikh; audit trails for all body-worn camera (BWC); BWC for Officers Dsouza and Glemaud during a home visit on November 25, 2023 [FN2]
; finalized activity logs for Officers Oneell, Molina, Barreto, and Duffy; a list of tangible items recovered from Defendant with designations indicating which the Prosecution intends to introduce as evidence at trial; contact information and witness designations for Emergency Medical Services (EMS) personnel; the precinct command log; and Electronic Record Management Systems (ECMS) access logs for all disclosed DD5s. Defendant also argues that the Prosecution's SCOC, dated February 14, is invalid because the stated basis for the delayed disclosure is false; Defendant points out that the document disclosed is dated September 27, 2023, but the SCOC asserts that it did not exist when the COC was filed on January 17, 2024.
The Prosecution argues their COC was filed in good faith and valid under CPL §245.50. The Prosecution does not dispute that Defendant is entitled to the IAB log about Officer Molina but argues their failure to notice a single document was missing amid twenty-six other Giglio items does not undermine their diligence. The Prosecution asserts that the CCRB allegation histories they disclosed are the most up to date in their possession, and that their redactions to all Giglio materials were proper because they only apply to personal identifying information that serves no impeachment value. They state that, because there are no CCRB adjudications for either testifying witness, no closing reports exist. Regarding non-testifying officers, the Prosecution argues they are not required to disclose impeachment materials. They argue audit trails are not subject to automatic discovery because they contain nothing related to the subject matter of the case that has not already been disclosed in other materials. The Prosecution states that no BWC exists for the home visit on November 25, 2023. The parties agree that activity logs are automatically discoverable, but the Prosecution argues the ones they turned over contain all information related to the subject matter of the case; the only additional information on the finalized versions is about unrelated events. The Prosecution contends that the only tangible property taken from Defendant was vouched by police for safekeeping, not as arrest evidence. As such, they argue they are not required to provide the list Defendant requests. They state that they already disclosed EMS personnel names and shield numbers, as well as the address and phone number for the Fire Department of New York (FDNY). They do not, however, state whether the EMS personnel are designated as testifying witnesses. Finally, they argue neither the command log nor the ECMS logs are discoverable.

 RELEVANT LAW
Pursuant to the automatic discovery provisions of CPL §245.20(1), the prosecution is required to disclose to the defendant, without motion, a list of enumerated items. Disclosure under this section is limited to "all items and information that relate to the subject matter of the case and are in possession, custody or control of the prosecution or persons under the prosecution's direction and control" (CPL §245.20[1]).
Once such disclosure is made, the prosecution must certify compliance with these discovery obligations by the service and filing of a COC (CPL §245.50[1]). The statute further provides that "[n]o adverse consequences to the prosecution . . . shall result from the filing of a certificate of compliance in good faith and reasonable under the circumstances; but the court may grant a remedy or sanction for a discovery violation as provided in 245.80 of this Article" (Id.).
If the prosecution provides additional discovery after filing their COC but prior to trial, they must file a SCOC, detailing the additional materials (CPL §245.50[1]). In the SCOC, the prosecution must also detail the basis for the delayed disclosure so the court may evaluate whether the late disclosure affects the validity of the original COC (CPL §245.50[1-a]; see also People v Bay, 41 NY3d 200 [2023]). The filing of a SCOC shall not affect the validity of the original COC if the COC was filed in good faith after exercising due diligence (id.).
Pursuant to CPL §30.30(1)(b), the prosecution must declare trial readiness within ninety days from the date of commencement of a misdemeanor criminal action. To properly announce trial readiness, the prosecution must certify in good faith compliance with their discovery obligations pursuant to CPL §245.20 (CPL §30.30[5]). "Absent an individualized finding of special circumstances in the instant case by the court before which the charge is pending, the prosecution shall not be deemed ready for trial . . . until it has filed a proper certificate [of compliance]" (CPL §245.50[3]). A defendant seeking dismissal pursuant to CPL §30.30 meets their initial burden by alleging that the prosecution has failed to declare readiness within the statutorily prescribed period (People v Beasley, 16 NY3d 289, 292 [2011]).
Once the defendant has shown that there is more than ninety days of delay, the burden of proving the existence of excludable periods falls upon the prosecution (People v Berkowitz, 50 NY2d 333, 349 [1980]). The prosecution must demonstrate that the disputed adjournments are excludable by reference to a statutory provision (People v. Luperon, 85 NY2d 71, 77-78 [1995]; People v. Cortes, 80 NY2d 201 [1992]; People v. Santos, 68 NY2d 859 [1986]; Berkowitz, 50 NY2d at 348-350). The prosecution also bears the burden to clarify, on the record, the basis for an adjournment so that the motion court can determine to whom the adjournment should be charged (Cortes, 80 NY2d at 215-216; People v Liotta, 79 NY2d 841 [1992]; Berkowitz). 

ANALYSIS
Impeachment Materials
The Prosecution is required to disclose impeachment materials for testifying police officer witnesses as part of automatic discovery (CPL §245.20[1][k][iv]). This includes any existing disciplinary records, including the underlying documents (People v Hamizane, 80 Misc 3d 7 [2023]). The impeachment materials at issue in this case fall into two categories: those pertaining to testifying witness and those pertaining to non-testifying witnesses. As a preliminary matter, the Court finds that the Prosecution is obligated to disclose materials for testifying [*3]witnesses only in this case (CPL §245.20[1][k][iv]).
The Court acknowledges the truth of Defendant's argument, that there may be scenarios where a defendant is entitled to impeachment materials for a non-testifying officer where that officer's credibility is directly at issue in the case (People v Peralta, 79 Misc 3d 945 [2023]). However, Defendant fails to advance such an argument here, such as some specific police misconduct that calls into question the legitimacy of the arrest and investigation. The Court has neither a statutory nor factual basis upon which to conclude Defendant is entitled to any Giglio materials for non-testifying officers. Nevertheless, because CPL §245.20(7) mandates a presumption of openness, the Court orders the Prosecution to provide Giglio materials for the three non-testifying officers within thirty days. This leaves the question of Giglio materials Defendant seeks for testifying officers.
The Court is persuaded by the Prosecution's argument that their redactions to Giglio materials were proper, except for the names of those who made complaints against the officers. CPL §245.20(5) permits a party to withhold portions of a document if, in his or her judgment, good cause exists for doing so. The Prosecution states that they only redacted names, dates of birth, and other personal identifying information from the documents. They argue, and the Court mostly agrees that this information says nothing of the officer's credibility, and protecting the privacy of both the officers and those making complaints against them is an important objective giving rise to good cause. Defendant does not need to know dates of birth or other personal identifiers to be able to cross-examine the officers about their prior misconduct. However, Defendant must be afforded the names of those making the complaints, without which he cannot adequately investigate the allegations and prepare for cross-examination. The Prosecution is ordered to amend their redactions accordingly and provide the materials to Defendant within fifteen days. Regardless, the Court finds that the Prosecution fulfilled their disclosure obligation, as they acted in good faith (CPL §§ 245.20[1][k][iv], [5]).
The Prosecution is obliged to ascertain the existence of and disclose impeachment materials, even those not in their custody or control, such as CCRB allegation histories and documentation (CPL §§ 245.20[1][k][iv], [2]; People v Hamizane, 80 Misc 3d at 11). The Court credits the Prosecution's attestation that the CCRB disclosures they provided are the most up to date in their possession. However, in the spirit of CPL §245.20(7)'s presumption of openness, the Court orders the Prosecution to ascertain whether updated CCRB allegation histories indeed exist, and if they do, to disclose them to Defendant within thirty days. Regarding the CCRB closing reports, the Court credits the Prosecution's attestation that no such documents exist.
The parties agree the IAB log related to Officer Molina's substantiated misconduct claim is subject to automatic discovery (CPL §245.20[1][k][iv]). The parties also agree that the Prosecution failed to disclose it before filing the COC. The discovery statute demands due diligence and good faith, but it does not demand perfection (People v Bay, 41 NY3d 200 [2023]). The Court declines to invalidate the COC for lack of the IAB log. The Prosecution has demonstrated due diligence by the fact that they promptly obtained and disclosed the missing log once they became aware of the oversight. They also demonstrated their diligence by the volume of discovery shared: they have disclosed over eighty-five items of discovery, including hundreds of pages of documents and approximately fifteen audio and video files. The Court acknowledges two caveats to this, though. First, some of the video files shared related to another case and were sent in error. However, several more were indeed related to this case and properly shared. Second, their SCOC falsely asserts that disclosure of the IAB log was delayed because it did not [*4]exist when the COC was filed. The Court cautions the Prosecution to take seriously the statutory requirements for filing a valid SCOC, including the necessity of an explanation for the delay. This is not merely a box-checking exercise; it is a legislative mandate. However, the Prosecution's explanation in their moving papers — that amid twenty-six other Giglio documents, this solitary document slipped through the cracks — is reasonable under the circumstances. As such, the Prosecution's failure to turn over the IAB log is not fatal to the COC.
Audit Trails
Although no appellate authority yet exists clarifying whether BWC audit trails are subject to automatic discovery, the Court is informed by the fact-finding hearing conducted in Queens County in the case of People v Ballard (82 Misc 3d 403 [2023]). At the hearing, Allison Arenson, Executive Agency Counsel and Director of the New York City Police Department (NYPD) BWC Unit Legal Bureau testified extensively about the nature, classification, and maintenance of BWC audit trails, according to established NYPD procedure. Ms. Arenson pointed to the NYPD Patrol Guide Section 212-213, which dictates procedures for using BWC, including when officers must activate them, when and how officers upload footage, how officers tag and categorize footage from a drop-down menu according to what is depicted, how officers can add their own freeform description and notes, and how officers share this information with prosecutors. Specifically, Ms. Arenson discussed how two categories of audit trails, "device" and "evidence" require input from officers.
CPL §245.20(1) requires that the prosecution disclose all information in their possession, custody, or control that is related to the subject matter of the case. The audit trails are statutorily in the Prosecution's possession (CPL §245.20[2]). Ms. Arenson's testimony makes abundantly clear that BWC audit trails meet this definition, as they contain information about the BWC created during this case (People v Ballard, 82 Misc 3d 403 [2023]). Conversely, if an officer fails to create audit trails, evidence thereof constitutes impeachment material, as it would represent a departure from NYPD Patrol Guide directives (Ballard, 82 Misc 3d 403). CPL §245.20(1)(k)(iv) requires disclosure of impeachment materials for testifying prosecution witnesses. Whether by virtue of their existence or their absence, the Court finds that "device" and "evidence" BWC audit trails are subject to automatic discovery (CPL §245.20[1]; Ballard, 82 Misc 3d 403; People v Lyte, 2024 NY Slip Op. 50655[U]). However, given that this an evolving area of understanding and no conclusive appellate authority exists, the Prosecution's statutory interpretation to the contrary was reasonable. They are ordered to disclose the audit trails within thirty days (CPL §245.20[1]).
Tangible Property
CPL §245.20(1)(m) provides that the prosecution must disclose a list of tangible objects obtained from or possessed by the defendant, including a designation as to which were physically or constructively possessed and recovered during a search or seizure by police, and which were recovered after being abandoned by the defendant. This section is couched in relevance, as CPL §245.20(1) refers only to information or materials that relate to the subject matter of the case. The Prosecution affirms that the only property taken by police in this case was vouchered for safe keeping and not as arrest evidence. In other words, the police do not [*5]regard the property as relating to the subject matter of the case and agree to release it to Defendant. As such, the Prosecution is not obligated to produce the list Defendant requests.
EMS Witness Information
CPL §245.20(1)(c) requires the prosecution to disclose names and adequate contact information for all civilians who have information about the case, and a designation as to whom they intend to call as a witness. The Prosecution asserts, and the Court credits that they provided the names of the EMS personnel and the address and phone number for the FDNY in automatic discovery. However, they fail to address Defendant's contention that they have not provided a designation as to which among them may be called as a witness.
Under CPL §245.80, the Court may impose an appropriate remedy or sanction for failure to timely disclose discoverable materials. Such a remedy or sanction must be proportionate to the prejudice suffered by the affected party (CPL §245.80[1]). Defendant has not been afforded adequate opportunity to investigate the verisimilitude of and prepare a defense against any potential testimony by EMS personnel in this case. Accordingly, the Court finds that the appropriate remedy is preclusion of their testimony as witnesses (CPL §245.20[1][c]; CPL §245.80).
Command Log and ECMS Access Logs
Neither Defendant nor the Prosecution offer any argument, cogent or otherwise, as to the discoverability of the command log and ECMS access logs. They merely assert opposing conclusions. In the absence of any facts or arguments, the Court has but to fall back upon CPL §245.20(7)'s presumption of openness and order the Prosecution to disclose them within thirty days (CPL §245.20[1][e]). However, this disclosure-by-default does not bear on the validity of the COC.
Speedy Trial
This case commenced with the filing of a misdemeanor complaint on November 11, 2023. The Prosecution filed their COC and SOR in good faith on January 17, 2024. The Prosecution is charged sixty-seven days.

 CONCLUSION
Because the Prosecution has not exceeded their ninety-day speedy trial limitation, Defendant's motion to dismiss is denied (CPL §30.30[1][b]).
The constitutes the decision and order of the Court.

Footnotes

Footnote 1:The Prosecution notes that Judge Espinal did not direct them to disclose audit trails.

Footnote 2:Defendant states and the Prosecution confirms that some BWC shared pertains to an entirely different, unrelated case. The Prosecution clarifies that this was done in error.