OPINION OF THE COURT
Titone, J.
In each of these cases, more than two years elapsed between the filing of the initial indictment and the date the charges were dismissed because of the prosecution’s failure to satisfy the readiness prescriptions of CPL 30.30. The People have appealed from the Appellate Division orders affirming these dismissals. Their appeals raise several novel issues, including the People’s accountability for delays resulting from the failure of the County Law article 18-B Panel to promptly supply an attorney to represent defendant Cortes and for a delay that resulted from the dismissal of the original indictments on a ground that was subsequently proven erroneous. The People’s appeals also raise questions concerning the excludability of certain periods of prearraignment delay, as well as other periods when the proceedings were postponed without defendants’ express consent. Having considered all of the parties’ arguments, we conclude that the People’s time to prosecute both defendants under CPL 30.30 was exceeded and that, accordingly, the indictments were properly dismissed.
L
Defendants Edwin Cortes and Santo Zenon were jointly charged with first degree criminal sale of a controlled substance and several other related offenses, all arising out of an incident in which the two men had allegedly sold more than four ounces of cocaine to an undercover officer. Cortes was arrested and, on June 18, 1987, was arraigned on a felony complaint. Both men were subsequently charged in an indictment filed on July 10, 1987. Cortes was arraigned on that indictment on July 21st, and Zenon was arraigned six days later on July 27th. At that point, Zenon was represented by an attorney from the Legal Aid Society. Cortes, whose retained counsel did not appear, was temporarily represented by an attorney assigned by the court.
On the next calendar date, September 9, 1987, Zenon was present without counsel, but neither Cortes, who previously had posted bail, nor his attorney appeared. The case was adjourned to September 29, 1987, at which time the People declared themselves ready to proceed. Since Cortes was still *206 absent, the court ordered that a bench warrant be issued. However, Cortes was not actually returned until February 23, 1988, when he was involuntarily brought into court on the warrant. At that time, Cortes advised the court that he could no longer afford his retained attorney and that he would need assigned counsel to represent him. The case was adjourned until March 1, 1988.
Two more adjournments ensued, the first to give Cortes’s new attorney additional time to prepare and the second to enable the People to respond to Cortes’s new attorney’s discovery motion. On May 5, 1988, the case was again adjourned at both counsels’ request, and Cortes’s counsel asked to be relieved. That request was granted at the next calendar call on May 31, 1988. However, despite several additional adjournments and the court’s submission of "a requisition” to the 18-B Panel, no counsel appeared for Cortes until the October 19, 1988 calendar call.
At that time, the court examined the Grand Jury minutes and discovered that the indictment had been obtained in violation of the Appellate Division’s recent decision in People v Cade (140 AD2d 99 [Aug. 29, 1988], adhered to on rearg 145 AD2d 565, subsequently revd 74 NY2d 410).[1] The court immediately dismissed the indictment against both defendants and directed the People to file a written motion for permission to resubmit (see, CPL 210.20 [4]). The suggested motion was made on November 17, 1988, and on December 6, 1988 the court granted the motion. A new indictment was not filed, however, until January 17, 1989. Following several more adjournments, Zenon was arraigned on February 16, 1989 and Cortes was arraigned on March 9, 1989. The People announced their readiness to proceed on the new indictment on March 14, 1989.
On the same day that the People’s readiness announcement was made, Cortes’s attorney failed to appear, and the court ordered new counsel to be assigned. A similar direction was made on the next court date, April 17, 1989, when Cortes’s former attorney appeared and formally asked to be relieved. Nonetheless, three more calendar calls ensued during which *207 Cortes had to appear without counsel. On one occasion, the court stated that the 18-B Panel was having difficulty obtaining an attorney who was willing to take an A-l felony case. On another occasion, the court noted that it was planning to involve the Administrative Judge in the effort to obtain counsel for Cortes. Finally, on July 19, 1989, Cortes appeared with an assigned attorney.
On September 14, 1989, after two additional adjournments, Cortes’s attorney moved to dismiss the indictment against his client on the ground that the requirements of CPL 30.30 had not been satisfied. A similar motion had already been made by Zenon’s attorney on March 30, 1989.
The trial court granted both motions, holding that, in both cases, the prosecution had far exceeded the time in which it was required to become ready. The Appellate Division affirmed the trial court’s dismissal decision, although its computations and legal analysis were different in several respects (People v Zenon, 175 AD2d 193; People v Cortes, 175 AD2d 171). The Appellate Division held that the People should be charged with the 85 days between July 26, 1988 and October 19, 1988, when defendant Cortes was without counsel due to the failure of the 18-B Panel, a failure that was characterized as being "attributable to the fault of the court” (175 AD2d, at 194, supra; 175 AD2d, at 172, supra)[2] The Appellate Division also charged the People with the 90-day period between the October 19, 1988 dismissal of the first indictment and the January 17, 1989 filing of the second, holding that the People could not have been ready during this period and, further, that the delay between the dismissal and the re-presentment was "unreasonable.” These major periods of delay, when added to the several shorter periods of pre- and postarraignment delay, brought the time chargeable to the People to well over the 183 days they had to become ready in Cortes and the 184 days they had to become ready in Zenon[3] The People now *208 appeal from the Appellate Division’s orders, arguing that many of its assumptions about the time chargeable to the People were erroneous. We will consider each of their separate claims seriatim.
IL
In felony cases such as this one, CPL 30.30 requires the People to be ready for trial within six months of the commencement of the criminal action (CPL 30.30 [1] [a]). Whether the People have satisfied this obligation is generally determined by computing the time elapsed between the filing of the first accusatory instrument and the People’s declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion. Since there were extensive pre- and postreadiness delays in these defendants’ prosecutions, an analysis of the causes of the delay and the availability of the statutory exclusions is crucial.
The People’s first claim concerns the availability and proper application of the exclusion for periods when the defendant was without counsel "through no fault of the court” (CPL 30.30 [4] [f]). The People argue that the Appellate Division erred in charging them with the periods of delay when defendant Cortes was without counsel because the underlying problem — i.e., the failure of the 18-B Panel to produce an attorney for him — was not the "fault of the court.” The People’s argument, however, cannot be maintained in light of the close relationship between the courts and the 18-B system.
In our State, the system for assigning counsel to individuals who cannot afford to pay is derived from article 18-B of the County Law. Section 722 of that article requires counties to provide for the defense of indigents. Under section 722 (3), counties may fulfill this responsibility through "a plan of a [local] bar association * * * whereby the services of private counsel are rotated and coordinated by an administrator.” *209 Compensation and reimbursement are to be fixed by the court within certain statutorily prescribed limits (County Law § 722-b).
Under the rules of the Second Department, in which these prosecutions were commenced, the Second and Eleventh Judicial Districts are required to maintain an Assigned Counsel Plan formulated by an Advisory Committee. The Committee consists of an Administrative Judge of the Supreme Court (or designee), an Administrative Judge of the Criminal Court (or designee) and several nonjudicial members selected by the Presiding Justice of the Second Department (22 NYCRR 678.3, 678.4 [a]; see also, 22 NYCRR part 612 [1st Dept rules]). This Committee is responsible for establishing not only the basic operating plan of the 18-B Panel, but also the procedures for evaluating, training and disciplining attorneys, as well as the procedures for appointing and reappointing the attorneys who will serve (22 NYCRR 678.5).
In addition to its involvement through the Advisory Committee, the judiciary is directly responsible for many important aspects of the 18-B Panel’s operation. The Appellate Division itself designates the attorneys who will serve on the Panel for each county within its jurisdiction, and the Presiding Justice makes the final determination as to whether a particular attorney should be removed or reinstated (22 NYCRR 678.8, 678.10 [c]). Additionally, the Chief Administrator of the Courts is responsible for monitoring the operations of the Plan, and the Appellate Division itself has the duty to determine whether changes in the Plan’s procedures are needed to improve the system’s performance (22 NYCRR 678.11, 678.12).
It is thus apparent that the judiciary is intimately involved in both the design and the operation of the 18-B Panel. In view of this pervasive supervisory role, it is both fair and reasonable to hold the courts accountable for deficiencies in the system such as occurred in this case, where the 18-B Panel failed to perform its basic mission of furnishing counsel to a defendant who could not afford to retain an attorney on his own. Under this analysis, the lengthy delays that occurred because of defendant Cortes’s lack of representation were unquestionably attributable to the "fault of the court,” and, consequently, the exclusion provided by CPL 30.30 (4) (f) is unavailable.
That conclusion, however, does not resolve the ultimate *210 question of whether the delays associated with the 18-B Panel’s failure should be "charged” to the People for purposes of computing their compliance with CPL 30.30’s strictures. The exclusions set forth in CPL 30.30 (4) are ordinarily invoked to excuse delays attributable to the People’s unreadiness. In this case, however, the two periods when Cortes was without counsel because of the 18-B Panel’s default both occurred after the People had declared themselves ready for trial. Under these circumstances, the analysis suggested by People v Giordano (56 NY2d 524) and People v Anderson (66 NY2d 529) must be employed.
In People v Giordano (supra, at 525), this Court reiterated the principle it had earlier set forth in People v Brothers (50 NY2d 413) and held that once the People announce their readiness on the record, their obligations under CPL 30.30 are satisfied. Under Giordano, subsequent delays resulting from such circumstances as Court congestion provide "no basis for [CPL 30.30] dismissal” (56 NY2d, at 525, supra).
In People v Anderson (supra, at 535), the Court refined this principle, noting that Giordano did not mean that "no delay on the part of the People * * * after announcement of readiness is to be counted against them.” As the Court stated in Anderson, some postreadiness may be chargeable to the People, but only when the cause of the delay directly implicates the People’s ability to proceed with trial (66 NY2d, at 536, supra).[4]
In this case, the People had declared themselves ready on September 29, 1987, thereby signifying that they had done everything they could up to that point to move the case to trial. The impediment that caused the delay during the disputed periods — Cortes’s lack of representation — did not affect the People’s ability to present their own case and, consequently, did not affect their "readiness” as that term is used in CPL 30.30 analysis. Thus, the periods of postreadiness delay attributable to Cortes’s lack of representation were simply not cognizable under CPL 30.30, and the Appellate Division’s decision to include them in the time chargeable to the People was erroneous.
*211 Ill
The second major source of controversy in this appeal is the 90-day period between October 19, 1988, the date the first indictment was dismissed for a violation of the then-existing rule announced in People v Cade (140 AD2d 99, supra), and January 17, 1989, the date that the second indictment against these two defendants was filed. Both courts below charged this entire period to the People, and we find no reason to disturb their holdings.
Initially, we note that, unlike the postreadiness delays attributable to Cortes’s lack of representation, this 90-day period of delay did implicate the People’s CPL 30.30 obligations, since the absence of a valid indictment during this period was a circumstance that directly impaired their ability to proceed to trial (see, People v Colon, 59 NY2d 921; People v Sturgis, 38 NY2d 625). Thus, the only question is whether the People’s unreadiness during this period may be excused under the terms of the statute.
The People first argue that the entire 90-day period during which there was no extant indictment should have been excluded as an "exceptional circumstance” under CPL 30.30 (3) (b) and (4) (g) because, as was established by this Court’s subsequent decision in People v Cade (74 NY2d 410, supra), the dismissal of the indictment was erroneous. Alternatively, they contend that since the People could have successfully appealed from the order of dismissal, the entire period should be excluded under CPL 30.30 (4) (a) as resulting from "other proceedings concerning the defendant” that were, in the People’s words, "the functional equivalent of a successful People’s appeal.”
The People’s contention that the 90-day period should be excluded as an "exceptional circumstance” is unpersuasive. First, the court’s decision to dismiss the indictment was not erroneous at the time it was made. To the contrary, the trial court was bound to follow existing precedent and was, accordingly, acting properly when it dismissed the indictment under the authority of the Appellate Division’s decision in People v Cade (140 AD2d 99, supra).
Second, even if the trial court’s ruling had been legally improper, an erroneous dismissal is simply not the type of "exceptional circumstance” that the Legislature had in mind when it enacted CPL 30.30 (3) (b) and (4) (g). Legal rulings are routine events in criminal trials. The fact that a particular *212 ruling may be erroneous does not by itself transform that ruling into an "exceptional circumstance.” Moreover, the Legislature has already provided the People with adequate protections in the event of an erroneous dismissal. When an indictment has been dismissed, the People have the right to take an immediate appeal and if they elect that course, the court must exclude from the time in which the People must be ready a "reasonable” time for the appeal’s completion (see, CPL 30.30 [4] [a]; 450.20 [1]). In view of these express provisions, it would be anomalous to hold that erroneous dismissals may also be treated as "exceptional circumstances” under CPL 30.30 (3) (b) and (4) (g).
For similar reasons, we reject the People’s alternative argument that the 90-day period before a new indictment was obtained should be excused under CPL 30.30 (4) (a) as the "functional equivalent of a successful appeal.” In fact, there is no "functional equivalence” between an appeal and the procedure utilized here, i.e., a formal motion for permission to resubmit followed by a resubmission to a Grand Jury and the filing of a new indictment. CPL 30.30 (4) (a) specifically lists appeals and pretrial motions as separate categories of "proceedings concerning the defendant” that may lead to excusable delays. Moreover, appeals and resubmission proceedings have different purposes, are characterized by entirely different procedures and are governed by wholly distinct time constraints. The most significant difference is, of course, that, in contrast to an appeal, the process of resubmitting and obtaining a new indictment is largely within the People’s control. Having opted to rely on this process, the People cannot now claim the benefit of the lengthier period of excusable delay that might have been permitted had they opted instead for an appeal.
Finally, we decline to follow the People’s request to exclude at least some of the 90-day period between indictments as a "reasonable time” for motion practice (see, CPL 30.30 [4] [a]). Since both courts below held the entire 90-day period to be unreasonable, any effort by us to define a lesser "reasonable” period for motion practice would require us to engage in fact finding — an activity that is outside the scope of our powers.
IV.
The third major block of disputed time involves the periods *213 that preceded Cortes’s and Zenon’s two arraignments. The People do not contest their accountability for the 22-day period between the filing of the felony complaint in Cortes on June 17, 1987 and the filing of the indictment on July 10, 1987, but they do contest their accountability for the periods between the filing of the two indictments and the defendants’ arraignments on those indictments.
The question of prearraignment delays was recently addressed in People v Correa (77 NY2d 930), in which we established the principle that the People are not excused from readying their case merely because the defendant has not yet been arraigned. As we stated in Correa, "[d]clays between indictment and arraignment, like other court congestion, do not prevent the People from being ready for trial” (id., at 931).
It is true, as the People contend, that Correa did not go so far as to hold that prearraignment delays are always automatically chargeable to the People. Some prearraignment delays may be excused if they are caused by events recognized as exclusions under CPL 30.30 (4). In the Cortes case, however, the People did not claim any specific CPL 30.30 (4) ground for exclusion in response to the dismissal motion. Instead, they argued only that both periods of delay between the filing of the two indictments and the arraignments on those indictments should be excluded, in their entireties, as "reasonable time[s] to arrange for defendant’s arraignment.” That is precisely the argument we rejected in Correa. Accordingly, since the People failed to satisfy their burden of proving their entitlement to an exclusion during this period preceding their readiness declaration, they are fully chargeable with the 84 days of prearraignment delay[5] that occurred in People v Cortes (see, People v Santos, 68 NY2d 859; People v Berkowitz, 50 NY2d 333).[6]
In the Zenon case, the People are chargeable with most of the 47 days of prearraignment delay. The 17-day period between the filing of the first indictment (July 10, 1987) and *214 the arraignment on that indictment (July 27, 1987) is chargeable to the People because, in addition to arguing that it represented a "reasonable time” to arrange for an arraignment, the only explanation they offered for that period was that it should be excluded as a "consent” adjournment because defense counsel did not object to the delay.[7] However, as we recently held in People v Liotta (79 NY2d 841, 843), a mere failure by defense counsel to object to an adjournment does not constitute "consent” within the meaning of CPL 30.30 (4) (b).
Of the 30 days that elapsed between the filing of the second indictment (January 17, 1989) in Zenon and the arraignment on that indictment (February 16, 1989), all but 8 days are chargeable to the People, since the People made essentially the same faulty arguments with respect to this period as they did in connection with the delay that preceded the first arraignment. The period between February 8, 1989 and the February 16, 1989 arraignment should be excluded, however, because the court and the prosecutor were prepared to proceed on the 8th but defense counsel requested a later date due to his own scheduling problems. Thus, this part of the prearraignment delay was, in actuality, consented to by the defense (see, CPL 30.30 [4] [b]).
Finally, we reject the People’s contention that the delays between the filing of the second indictments and defendants’ separate arraignments on those indictments should not be charged to them under People v Anderson (supra) because they were, in fact, "ready” within the meaning of CPL 30.30 as soon as the second indictments were filed. The People’s contention rests on the erroneous assumption that having previously announced their readiness to try the first indictments, they were not required to reannounce their readiness for trial upon the filing of the second. While the People are generally not required to declare their readiness repeatedly throughout the pendency of a criminal action, the dismissal of an indictment and the filing of a new one represents such a substantial break in the proceeding that a new communication of readiness is needed to eliminate guesswork and post hoc rationalizations (see, People v Kendzia, 64 NY2d 331; People v Brothers, 50 NY2d 413, supra; People v Hamilton, 46 NY2d 932). Without a new declaration of readiness, the trial court and the *215 defense would be left to speculate about the People’s state of preparedness on the new indictment.[8]
V.
The last large blocks of time in dispute involve two adjournments, both of which primarily affected defendant Cortes: one resulting in a 44-day delay and the other resulting in a 70-day delay. The 70-day delay occurred between Cortes’s first arraignment on July 21, 1987 and the People’s readiness declaration on September 29, 1987. The 44-day delay occurred between August 1, 1989, when Cortes appeared with counsel but the case was nevertheless adjourned, and September 14, 1989, when Cortes moved for a CPL 30.30 dismissal.[9]
With regard to the latter delay, we agree with the Appellate Division’s conclusion that it should be included within the People’s unready time, although we reach our own conclusion by a somewhat different route. The People argued before the trial court that the delay between August 1 and September 14, 1989 was occasioned by Cortes’s counsel’s expressed intention to make a CPL 30.30 motion by the latter date. However, no contemporaneous record was made of the reason for the August 1, 1989 adjournment and, consequently, the trial court could not determine on the subsequent CPL 30.30 motion to whom the adjournment should be charged. Although the defendant ordinarily has the burden of showing that any postreadiness adjournments occurred under circumstances that should be charged to the People (see, People v Anderson, 66 NY2d, at 541, supra), we have recently held that it is the People’s burden to ensure, in the first instance, that the record of the proceedings at which the adjournment was actually granted is sufficiently clear to enable the court considering the subsequent CPL 30.30 motion to make an in *216 formed decision as to whether the People should be charged (People v Liotta, supra, at 843; see also, People v Berkowitz, supra). Since the People failed to satisfy this primary obligation, they must assume responsibility for the 44-day delay that followed the August 1,1989 adjournment.
The 70-day period between Cortes’s first arraignment on June 18, 1987 and the People’s first readiness declaration on September 29,1987 is also chargeable to the People because of their failure to meet another burden of proof that the case law construing CPL 30.30 imposes. Inasmuch as this entire period occurred before the People had declared themselves ready, the prosecution had the burden of establishing their entitlement to have the delay excluded from their readiness time (see, e.g., People v Santos, 68 NY2d 859, supra). The only argument the People made in the trial court with respect to this period was that these 70 days, like the remainder of the time between Cortes’s arraignment and their readiness declaration, were excludable under CPL 30.30 (4) (b) because there were adjournments to which the defense had consented by failing affirmatively to object. As previously noted, however, defense counsel’s silence is not sufficient, in itself, to constitute "consent” (People v Liotta, supra).
Thus, as defendant Cortes argues, the entire 70-day period should be charged to the People in his case. In defendant Zenon’s case, the only claim made on appeal with respect to delay between the first arraignment and the first readiness declaration concerns the period between an adjournment occurring on September 9, 1987 and the People’s declaration of readiness on September 29, 1987. Since the defense did not affirmatively consent to this adjournment, the intervening 20 days are chargeable to the People.[10]
VI
Applying the foregoing legal conclusions to the facts in these cases, we hold that both indictments were properly dismissed.
In Cortes, the People are chargeable with the 22 days from the filing of the felony complaint to the filing of the first indictment, the 11 days from the filing of that indictment to *217 Cortes’s arraignment on that indictment and the 70 days between the arraignment and the People’s first declaration of readiness. Additionally, the People were properly charged with the entire 90-day period between the dismissal of the first indictment and the filing of the second, as well as the 51-day period between the latter event and Cortes’s arraignment on the second indictment. Finally, the People are chargeable with the 44-day delay that occurred between August 1, 1989, when the case was adjourned for reasons not apparent from the contemporaneous record, and September 14, 1989, when defendant moved to dismiss the indictment pursuant to CPL 30.30. Thus, even when the days that were improperly charged to the People are subtracted, the total delay chargeable to the People, 288 days, is well over the 183 days in which the People were required to become ready.
In the Zenon case, there were 17 days of unexcused prearraignment delay associated with the first indictment and 30 days of unexcused prearraignment delay associated .with the second. Additionally, as in the Cortes case, the People are chargeable with the entire 90-day period between the dismissal of the first indictment and the filing of the second. The People’s unreadiness time also included a 24-day adjournment from December 15, 1987 to January 8, 1988 that was occasioned by the unavailability of the People’s file[11] and a 26-day delay between a February 16, 1989 calendar call and the second People’s readiness declaration on March 14, 1989.[12] Finally, the 20-day period between the September 9, 1987 adjournment and the People’s first readiness declaration on September 29, 1987 was attributable to the People, resulting in a total of at least 187 days of delay that should be charged to the People.
*218 Accordingly, in each case, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Hancock, Jr., and Bellacosa concur; Judge Smith taking no part.
In each case: Order affirmed.

. In Cade, the Appellate Division had held that where the Grand Jury has voted a true bill and, before any indictment can be filed, has vacated it at the prosecutor’s request to hear additional evidence, the resulting indictment is fatally defective (140 AD2d 99, supra). On October 24, 1989, this Court rejected that conclusion and reversed the Appellate Division’s order (74 NY2d 410, supra).

. The period during which Cortes was unrepresented was relevant to Zenon’s motion as well because CPL 30.30 (4) (d) permits an exclusion for delays associated with properly joined codefendants, but only when the statutorily prescribed time for the People to be ready to try the codefendant has not yet run.

. The six months that the People have to become ready in felony cases is measured by calendar months. Since the number of days in each calendar month may differ, the period in question, which is computed from the date the action was first commenced (see, People v Osgood, 52 NY2d 37) is not necessarily 180 days (see, e.g., People v Rhee, 111 AD2d 655, 656; People v *208 Jones, 105 AD2d 179, affd 66 NY2d 529; People v Battles, 77 AD2d 405, 407). The discrepancy in this instance between the time the People had to become ready in Cortes and the time they had to become ready in Zenon results from the fact that the action against Cortes was commenced with the filing of a felony complaint in June of 1987, while the action against Zenon was not commenced until an indictment was filed in July 1987.

. Even where the postreadiness delay is attributable to the People’s inability to proceed to trial, the delay may be excused if it was occasioned by "some exceptional fact or circumstance” (see, CPL 30.30 [3] [b]) or " 'resulted] from’ action taken by the defendant within the meaning of subdivisions 4 (a), 4 (b), 4 (c) or 4 (e)” (People v Anderson, supra, at 536).

. The 84 days includes the 22-day period between the filing of the felony complaint (June 17, 1987) and the filing of the first indictment (July 10, 1987), the 11-day period between the filing of the first indictment and the arraignment on that indictment (July 21, 1987) and the 51-day period between the filing of the second indictment (January 17, 1989) to the arraignment on that indictment (March 9,1989).

. On this appeal, the People make a number of other claims for exclusions during this 84-day period. However, since none of these claims were made before the trial court, they are not cognizable on this appeal.

. The foregoing is not inconsistent with the Court’s holding in People v Lomax (50 NY2d 351, 356), in which we stated that, even where there have been successive indictments, there can be only one criminal action for each set of criminal charges brought against a particular defendant. Here, we hold only that, despite the theoretical continuity of the criminal action for purposes of computing the time within which the People must become ready (see, id., at 356), the dismissal of the first indictment and its replacement by a new one constituted a sufficiently significant interruption in the normal progression of that unitary action to require a new declaration of readiness from the People.

. This period occurred after the August 1, 1989 CPL 30.30 dismissal of the Zenon indictment and is thus relevant only to the Cortes case.

. The additional explanations offered by the People on appeal cannot be considered, since they are not preserved for our review.

. The People’s present argument that this 70-day period should be excluded under CPL 30.30 (4) (f) because defendant Cortes was without counsel through no fault of the court is unpreserved.

. When the prosecutor reported that the file was missing, the court initially suggested January 8, 1988 as the next court date, but at Zenon’s counsel’s request, the adjourn date was postponed to January 19, 1988. Contrary to defendant Zenon’s present contention, the intervening 11 days are not chargeable to the People, since that delay is directly attributable to the defense (see, People v Anderson, supra, at 536 ["with respect to postreadiness delay it is the People’s delay alone that is to be considered”]).

. Before the trial court, the People argued that this period should be excluded because defendant consented to the adjournment. That argument is simply not supported by the record (see, People v Liotta, supra). To the extent that the People now rely on other grounds for excluding this time period, their claims are unpreserved and therefore not reviewable.