People v Clifford (2025 NY Slip Op 25247)

[*1]

People v Clifford

2025 NY Slip Op 25247

Decided on November 20, 2025

Criminal Court Of The City Of New York, New York County

Shamahs, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 20, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York, Plaintiff,

against
Damian Clifford, Defendant.

CR-017753-25NY

For Defendant: Twyla Carter, The Legal Aid Society, (Elaina Rahrig, Esq. of Counsel) 
For the People: Alvin Bragg, New York County District Attorney's Office (ADA Brooke Siegler, Esq. of Counsel)

Elizabeth Y. Shamahs, J.

On May 31, 2025, at approximately 5:16 PM, in front of 2080 1st Avenue, New York, New York, Police Officer Sheldon Elliot assigned to the 23rd Precinct of the New York City Police Department (NYPD), observed defendant, Damian Clifford, driving an automobile with a New Jersey license plate. Officer Elliot observed the keys in the ignition and the engine running with defendant sitting behind the wheel. He further observed defendant to have bloodshot eyes, an odor of alcohol emanating from his breath, was unsteady on his feet, and was talking to himself, which led Officer Elliot to conclude that defendant was intoxicated. Defendant was subsequently placed under arrest and brought to the Intoxicated Driver Testing Unit (IDTU) at the 45th Precinct where he refused to submit to chemical testing. Defendant also made admissions.
For these acts, defendant was charged and arraigned in Criminal Court with two counts of operating a motor vehicle while under the influence of alcohol Vehicle and Traffic Law (VTL) §§ 1192 (1), (3).
On June 1, 2025, the accusatory instrument was filed, and defendant was arraigned in Criminal Court, before the Honorable Michael Ryan. The case was adjourned for supporting deposition, and for the People to file a Certificate of Compliance (COC) and Statement of Readiness (SOR) in Part E on July 21, 2025.
In the interim, on July 17, 2025, the People filed and served a supporting deposition, COC, SOR, and Automatic Discovery Form (ADF) with the court and defense counsel after sharing approximately ninety items of discovery, in over two-hundred pages, with defendant, comprising of police paperwork from various units, 911 calls, radio runs, body-worn camera (BWC) videos, law enforcement officer witness disciplinary information, comprising of records from the Internal Affairs Bureau (IAB) of the New York City Police Department (NYPD) and records from the Civilian Complaint Review Board (CCRB), as well as civil information, with [*2]defendant, along with other miscellaneous items of discovery.
On July 21, 2025, the People were ready for trial in Part E, but defendant was not ready, and the misdemeanor complaint was deemed an information by the Honorable Michael Ryan. The case was adjourned for trial in Part E on September 16, 2025.
On August 25, 2025, defense counsel notified the prosecutor of approximately forty items of purportedly omitted discovery, namely (1) an updated Civilian Complaint Review Board (CCRB) history report for Officer Defrietas; (2) Central Personnel Information (CPI) report and Internal Affairs Bureau (IAB) logs for Officer Defrietas; (3) underlying CCRB documents pertaining to Officer Elliott under eleven different cases; (4) IAB logs and attachments pertaining to Officer Elliott under four different cases, three of them being substantiated; (5) three IAB log attachments for Officer Elliott; (6) civil lawsuit materials including settlement amounts and depositions for three civil suits; (7) an updated CCRB history report for Officer Taborda; (8) three CCRB investigative recommendations for case numbers 20180074, 201900865, and 202301835 pertaining to Officer Taborda; (9) five IAB log attachments for case number 19-1413, five attachments under 18-8484, and four attachments under 17-51697 pertaining to Officer Taborda; (10) civil lawsuit materials, including settlement amounts and depositions pertaining to Officer Taborda; (11) an arrest report worksheet; (12) defendant's arraignment card; (13) entity report; (14) any lab reports for any tests conducted on any property found on defendant or in his automobile; (15) device audit trails for all officers; (16) body-worn camera (BWC) video for Officer Madigan; (17) activity logs for Officer Madigan; (18) correct activity logs for Officers Ortiz, Taborda, and Zukowski, as the prosecutor had disclosed activity logs pertaining to the wrong date; (19) roll call logs; (20) interrupted patrol log; and (21) any portable breath test (PBT) materials not previously disclosed.
On August 27, 2025, the prosecutor responded to defense counsel's itemized list of outstanding discovery in a seven-page document and disclosed the four correctly dated activity logs and three additional documents of law enforcement disciplinary information, filing a Supplemental Certificate of Compliance (SCOC) and SOR to reflect those disclosures. In her itemized response to defendant's letter, she (1) confirmed the nonexistence of any updated CCRB report for Officer Defrietas; (2) confirmed the nonexistence of any CPI and/or IAB logs for Officer Defrietas; (3) confirmed the nonexistence of an updated CCRB report for Officer Elliot; (4) noted that CCRB recommendations are only created if an allegation is substantiated and further noted that the People previously disclosed the recommendations pertaining to substantiated allegations and additionally noted that there existed no additional requested information; (5)[FN1]
noted that the IAB logs and attachments do not relate to the subject matter of the case; (6) noted that the requested civil lawsuit information did not exist and/or did not relate to the subject matter of the case; (7) confirmed the nonexistence of any updated CCRB report for Officer Taborda; (8) noted that CCRB recommendations are only created if an allegation is [*3]substantiated and that no substantiated allegations existed for the officer; (9) noted that the IAB logs and attachments do not relate to the subject matter of the case; (10) noted that the requested civil lawsuit information did not exist and/or did not relate to the subject matter of the case; (11) confirmed the nonexistence of an arrest report worksheet; (12) noted that the arraignment card and the pre-arraignment notification report are not in the People's custody and control as they are generated by the NYC Office of Technology and Innovation, and that if they were created, then it would have been provided at arraignment; (13) confirmed that an entity report was not generated; (14) confirmed the nonexistence of lab reports/testing of defendant's property; (15) noted that audit logs were disclosed; (16) confirmed the nonexistence of BWC; (17) noted the error in the disclosed activity logs with the wrong date; (18) noted that the roll call log had been disclosed; (19) noted that the interrupted patrol log was not discoverable as it did not relate to the subject matter of the charges; and (20) noted that calibration records were disclosed.
On September 8, 2025, defense counsel replied to the prosecutor's response to defense counsel's letter of outstanding discovery, addressing two items, namely, the arrest report worksheet and device audit trails. Specifically, defense counsel (1) clarified that the arrest report worksheet she requested is also known as an "on line booking system arrest worksheet," and attached a sample, and (2) noted that the requested device audit trail logs are different that the evidence audit trail logs, and attached a sample.
On the same date, the prosecutor responded, noting that (1) the requested arrest report worksheet, also known as a scratch or handwritten copy, did not exist and that (2) the device audit trail log is not generated unless requested and contains the same information as the previously provided evidence audit trail log.
Now, in papers dated September 11, 2025, defendant, through counsel, now moves this Court for an Order deeming the People's initial July 17, 2025, COC invalid, and its accompanying SOR illusory, on the ground that certain materials were belatedly disclosed or undisclosed, deeming the People's subsequent SCOCs and SOR's invalid and illusory on the same grounds, and dismissing the misdemeanor information on the ground that the People have denied him a statutory right to a speedy trial.
The People oppose defendant's motions, in response papers, dated October 8, 2025, arguing that their COC and SCOCs were valid and that they are well within their speedy trial allowances. Defendant filed a reply to the People's papers on October 29, 2025.
After a thorough review of the parties' moving papers, along with the annexed exhibits therein, the court file, and the court minutes, the Court's Opinion is as follows:
MOTION CHALLENGING THE CERTIFICATE OF COMPLIANCE
Defendant moves this Court for an Order deeming the People's initial July 17, 2025, COC invalid, and its accompanying SOR illusory, on the ground that certain materials were belatedly disclosed or undisclosed and deeming the People's subsequent SCOCs and SOR's invalid. Specifically, defendant takes issue with the activity logs belatedly disclosed after the People failed to disclose the correctly dated activity logs with the initial COC, along with undisclosed CCRB recommendations, IAB logs and attachments, civil lawsuit information, audit trails, and defendant's arraignment card (Defendant's Motion). The People oppose, arguing that their COC and SCOCs were valid, filed in good faith after exercising due diligence, and that the belated disclosures do not vitiate the validity of the initial COC. They additionally argue that the belatedly disclosed and undisclosed materials do not constitute automatic discovery and consequently cannot vitiate the validity of the initial COC. The People additionally argue that, as an initial matter, defendant's claims should be deemed validly waived, as defendant failed to [*4]diligently confer with the People before filing the instant motion, as he must (People's Response).
As recently amended, effective August 7, 2025, article 245 of the Criminal Procedure Law requires the People to disclose to a defendant "material and information in the possession, custody or control of the prosecution or under the prosecution's direction and control," and provides a non-exhaustive list of materials subject to "automatic" disclosure. CPL § 245.20(1). Under CPL § 245.20(2), the People are required to "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [CPL § 245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control." The People are not required, however, "to obtain material or information if it may be obtained with the use of a subpoena duces tecum where the defense is able to obtain the same material with the use of a subpoena duces tecum." CPL § 245.20(2).
The People must also certify their discovery compliance in writing by filing a COC. Importantly, the People may file their COC even if they have not yet disclosed all automatically discoverable items provided that they have "exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the discovery required by [CPL § 245.20(1)]." CPL§ 245.50(1). The COC must "state that, after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery." CPL § 245.50(1) (emphasis added). The COC must also identify "the items provided" and "the items that the prosecution is required to disclose and of which the prosecution is aware but has been unable to obtain despite the exercise of due diligence as evaluated under this section." CPL § 245.50(1). If the People provide additional discovery in connection with their ongoing obligations outlined in CPL § 245.60, they must file "a supplemental certificate" that "identif[ies] the additional material and information provided." CPL §245.50(1). A SCOC will not impact the validity of the original COC if filed in good faith and after exercising due diligence or when the additional discovery did not exist when the initial COC was filed. CPL §245.50(1-a).
Once the People file a COC, a defendant must notify the People of any potential deficiencies in the COC by making "good faith efforts to confer with the [prosecution] regarding the specific and particularized matters" regarding the allegedly missing discovery. Then, if "no accommodation can be reached," the defense may file a motion to invalidate the People's COC provided that: (1) they do so within thirty-five days of the service of the People's COC; and (2) they file an accompanying affirmation of conferral stating that the defense "conferred in good faith or timely made good faith efforts to confer with the [prosecution] regarding the specific and particularized matters forming the basis for such challenge, that efforts to obtain the missing discovery from the [prosecution] or otherwise resolve the issues raised were unsuccessful, and that no accommodation could be reached." CPL § 245.50(4)(b)-(c). Significantly, the statute further specifies that "the court may grant a remedy or sanction for a discovery violation as provided in [CPL § 245.80]." CPL § 245.50(1). Any such remedy or sanction must be "appropriate and proportionate to the prejudice suffered by the party entitled to disclosure." CPL §245.80(1).
To determine the validity of the People's COC, a reviewing court must assess the People's due diligence. As the Court of Appeals held in People v Bay, 41 NY3d 200 (2023), due diligence is a "flexible standard that requires the People to make reasonable efforts to comply with [*5]statutory directives." Bay, 41 NY3d at 211 (internal quotation marks omitted). "Reasonableness, then, is the touchstone—a concept confirmed by the statutory directive to make 'reasonable inquiries.'" Id. at 211-12. Moreover, the Court recognized that, "[a]lthough the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things:" (1) "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements;" (2) "the volume of discovery provided and outstanding;" (3) "the complexity of the case;" (4) "how obvious any missing material would likely have been to a prosecutor exercising due diligence;" (5) "the explanation for any discovery lapse;" and (6) "the People's response when apprised of any missing discovery." Id. at 212. These six factors are now part of the statutory due-diligence analysis under CPL § 245.50(5)(a). This section also requires courts to consider whether: (1) "the belated discovery was substantively duplicative, insignificant, or easily remedied;" (2) "the omission was corrected;" (3) "the prosecution self-reported the error and took prompt remedial action without court intervention;" and (4) "whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial." CPL § 245.50(5)(a). A reviewing court must "look at the totality of the party's efforts to comply with the provisions of [article 245], rather than assess the party's efforts item by item." CPL § 245.50(5). The statute further directs that "[t]he court's determination shall be based on consideration of all factors listed in [245.50(5)(a)] and no one factor shall be determinative." CPL § 245.50(5)(b).
Indeed, the Bay decision made clear that, in assessing the validity of a COC, the reviewing court should engage in a "holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require [a court] to conclude that a COC is improper if the People miss even one item of discovery." People v Cooperman, 225 AD3d 1216, 1220 (4th Dept 2024); see also People v Williams, 224 AD3d 998, 1006-07 (3d Dept 2024) (People's COC was valid even though three discoverable items had not been disclosed where People provided "extensive" discovery before filing COC, identified missing items when they filed the COC, and acknowledged their duty to provide missing items upon receipt). Notably, "[a]rticle 245 is not intended for use as a 'sword,' whereby [ADAs] are expected to run themselves ragged in at times futile or near-futile attempts to procure material in which defense counsel has no substantive interest beyond exhausting the People's statutory speedy trial time or hoping that the People, in frustration, opt to abandon the prosecution." People v Barrios, 82 Misc 3d 606, 613 (Crim Ct Bronx Co 2024); see also People v Thompson, 79 Misc 3d 1220(A), *2 (Crim Ct Kings Co 2023) (article 245 "does not require the impossible; it does not demand that every scrap of discoverable information be turned over before the People may file a [COC]") (internal quotation marks omitted).
Furthermore, certain delays or discovery issues should not invalidate a COC that was made in good faith, after the exercise of due diligence and efforts made by the prosecution to comply with statutory obligations. Bay at 210-213. If the delay is a result of oversights in the production of material, delayed discovery of the existence of certain items, a good faith position that the material in question was not discoverable, or voluminous files, the Bay decision clearly posits that a court should apply a "holistic assessment" of the efforts made by the People to comply with their discovery obligations when evaluating the validity of a COC. Id. Moreover, several courts have found that certain delays or discovery issues should not invalidate a COC that was made in good faith, after the exercise of due diligence, and where, for example, the delay was a result of oversights in the production of material, delayed discovery of the existence [*6]of certain items, voluminous discovery, non-existent items, or material unrelated to the case. People v Cano, 71 Misc 3d 728 (Sup Ct, Queens County 2020); People v Lustig, 68 Misc 3d 234 (Sup Ct, Queens County 2020) (Zayas, J)(court found the People's certificate of compliance to be valid, since it was clearly filed in good faith under CPL § 245.50(1) and, therefore, no adverse consequence to the prosecution should result from the fact that the certificate was filed prior to the disclosure of the database search results).
Here, as an initial matter, this Court declines to entertain defendant's claims finding that they were validly waived. As noted above, under the recent amendments, a defendant must notify the People of any potential deficiencies in the COC, and is required to confer in good faith regarding the "specific and particularized matters forming the basis" of their COC challenge. CPL § 245.50(4)(c). Only then, if "no accommodation can be reached," may the defense file a motion to invalidate the People's COC. CPL§ 245.50(5). As demonstrated by the parties annexed exhibits, here, defense counsel requested approximately forty items of records during conferral without any explanation as to what these records are and why they are discoverable, and did not respond when the People inquired, only addressing two of their requested items and without addressing the purported reasons for disclosure. But when the defense demands materials that they allege are discoverable, the defense must "demonstrate that such materials" are discoverable. People v Graham, 2024 NY App Div LEXIS 6991, at *10 (3d Dept Dec 26, 2024) (citations omitted). Nor can it be said that defendant informed the People of the "specific and particularized matters forming the basis" of the instant COC challenge, if, like here, the People only learn of defendant's position and legal theory for the disclosure of material for the first time by COC challenge. Accordingly, because defendant failed to provide the People with "the specific and particularized" basis of his COC challenge, and therefore, failed to properly and meaningful confer with the People to try to resolve all issues before resorting to motion practice, defendant has waived the right to challenge the People's COC.
In any event, defendant's motion is without merit. After a thorough review of the moving papers, court file, COC, and supplemental COCs filed, the Court applied a "holistic assessment" of the People's efforts to comply with their discovery obligations, being mindful that perfection is not required. See Bay, 41 NY3d at 212. Here, the People's discovery list demonstrates that they initially disclosed well over eighty items, over two-hundred pages, prior to certifying compliance. That disclosure included activity logs, BWC footage, arrest paperwork, driving while intoxicated paperwork, law enforcement disclosures, audio relating to tapes and electronic recordings of 911 calls and more, demonstrating good faith and due diligence. The People's initial disclosures were extensive and substantial, especially in comparison to the belatedly disclosed and undisclosed materials that defendant cites (Defendant's Motion). After defense counsel requested additional discovery, the People were responsive to those requests to resolve any potential discovery lapses as they made various attempts to provide defense counsel with requested materials and did so, continuing to confer with defense counsel and addressing every line-item demand and providing a legal basis for nondisclosure. Taken together, this demonstrates that the People's initial COC, and subsequent COCs/SCOCs, made in good faith and after exercising due diligence, were valid.
In addition, this Court finds that the People's belated disclosures were entirely reasonable under the circumstances and accepts the People's proffered explanation of inadvertent error and/or minor oversight as to the initially disclosed activity logs that had the wrong date. This Court also notes that contrary to defendant's claim, modern day activity logs, unlike the memobooks of the past, "even for testifying witnesses — frequently contain very little in the way [*7]of substantive entries oftentimes, numerous officers respond to the location of an alleged crime in response to a radio run without taking any action apart from securing the alleged crime scene" (People v Tatum Gumbs, Docket Number CR-013225-21QN [Crim Ct Queens Co 2022] [Iannece, J]) and accordingly declines to invalidate on this ground.
Next, the remainder of defendant's cited belatedly disclosed or undisclosed disclosed materials are not subject to automatic discovery under CPL §245.45. Consequently, the failure to provide these materials with the initial COC cannot disturb its validity. Addressing defendant's cited piece of discovery ad seriatim, this Court holds that the following are not automatically discoverable for the reasons stated below:
BWC Audit Trail Logs
Defendant claims that the failure to provide BWC device audit logs vitiates the initial COC's propriety and that he is entitled to it. This claim fails. This Court holds that BWC audit trails, and their associated logs are not subject to automatic discovery. Audit trails and their logs are "system metadata" or "an automated set of chronological records of system activities." Vargas v Lee, 2015 NY Slip Op 31048(U), *4 (Sup Ct Kings Co 2015) (Dabiri, J.), rev'd on other grounds, 170 AD3d 1073 (2d Dept 2019). They reflect "automatically generated information about the creation or revision of a document . . . or the date and time of its creation or modification." People v Larkin, 72 Misc 3d at 663; see also People v Smith, Kings Co Ind. No. 1866/2019, *3-4 (Sup Co Kings Co 2020) (audit trails "describe the history, tracking or management of an electronic [file]") (internal quotation marks omitted). Unlike the camera footage itself, system metadata such as audit trails do not contain factual information about the charged crime or the perpetrator; it is not created or produced by law enforcement for use as an investigative tool to advance the prosecution." People v Soto, (Crim Ct Bronx Co 2021). See also People v. Gary Yerganian, Queens Co. Ind. No. 73090/2022, *9-10 (Sup Ct Queens Co 2024).
In that regard, the audit trail reports are comprised of information based on the software of Axon, a third-party company contracted to provide the NYPD with BWC and related software. People v Ballard, 82 Misc 3d 403 (Crim Ct Queens Co 2023).[FN2]
There are several different types of audit trails, including device, evidence, and user, but all these reports are generated by information maintained by Axon regarding the usage of its cameras and software system and are automatically uploaded into a cloud storage system. Id. The device audit trail report contains information related to issues such as a camera's battery life and available memory space, that a button was pressed to start and stop recording, or that it was placed on a charging dock, or connected to a charger. Id. The evidence audit trail reports contain information reflecting that footage was successfully uploaded into Axon's cloud-based storage system, whether there was any malfunction with a particular camera, or that an individual user recorded or subsequently watched a video. Id. In addition, evidence and user audit trails record the tags, labels, and categories that be added by members of the NYPD for the main purposes of retention and classification such as "arrest," "homicide," "car stop," and "summons" either by drop-down list or fillable format. Id.
For these reasons, this Court finds that because the audit trails are automatically [*8]generated by third-party company, Axon, and are system metadata, they are neither law enforcement reports, nor have they been seized on or on the behalf of law enforcement under CPL §245.20(1)(u)(i)(b). They are likewise not tapes and other electronic recordings under CPL §245.20(g). They also do not contain statements of a potential witness under CPL §245.20(1)(e), because the tags and labels that can be added by members of the NYPD are comparable to the pre-digital days where an officer might have placed crime scene photographs into a manilla folder, labeling the folder itself with labels such as "crime scene," or "ECT." See People v Mateo Garcia-Jacky, Docket No CR-019962-23QN (Crim Ct Queens Co 2023) (Battisti, J) ("tags are simply digital versions of traditional file folder labels one might attach to the hard copy of a report or photograph, having nothing to do with the subject matter of the case within the meaning of Article 245). Additionally, the audit trail logs do not relate to the subject matter of the case. See People v McMillian, 84 Misc 3d 1211(A) (Sup Ct Kings Co 2024) (holding that audit trail logs do not contain relevant information and do not relate to the subject matter of the case); People v Charles, Queens Co Ind No 73371/2023, *5 ("audit trails are essentially "data on data" and thus "offer no additional information regarding the subject matter of the case"). Accordingly, audit trails and their associated logs and reports are not discoverable.
In addition, this Court declines to open the door to potential future litigation with respect to third-party metadata. If this Court were to hold that audit trail logs are automatically discoverable, then defendant's hypothesis would equally apply to metadata stemming from every software and hardware company that a law enforcement agency utilizes on a day-to-day basis with respect to a defendant. This cannot be what the Legislature intended and would make the prosecution of cases functionally untenable and unworkable. See People v Leon, 10 NY3d 122 (2008) (declining to give interpretation to statute that would lead to "unworkable results"); People v Crespo, 32 NY3d 176, 183 (2018) (courts should construe statutes to avoid "an unreasonable or absurd application of the law"). For these reasons, this Court holds that audit trail logs are not subject to automatic discovery.
Arraignment Card
Defendant also claims that defendant's arraignment card remains outstanding. In support of this claim, he argues that this document is created in every case by the NYPD and is therefore imputed to be in the People's possession. The Court disagrees. The arraignment card is a court document and therefore, not in the People's possession or control. People v Young, 86 Misc 3d 1201(A) (Crim Ct Kings Co 2025). Accordingly, it is not discoverable.
Law Enforcement Disclosures — IAB Logs, IAB Attachments, and Civil Lawsuits
Defendant's claim that he is entitled to law enforcement disclosures as impeachment material, such as IAB logs, IAB attachments, and civil lawsuit information is denied and meritless. Under CPL § 245.20 (1)(k), the People are required to disclose "all evidence and information that relate to the subject matter of the case that tends to (iv) impeach the credibility of a testifying prosecution witness." But defendants are not entitled to automatic discovery of the entirety of a police officer's personnel file. People v Johnson, 218 AD3d 1347 (4th Dept 2023). Rather, defendants are only entitled only to such records to the extent they "related to the subject matter of the case." Id. at 1350 (internal quotation marks omitted); see also People v McCarty, 221 AD3d 1360 (3d Dept 2023). People v Jawad, 84 Misc 3d 31, 34 (App Term 2d Dept 2d, 11th, and 13th Jud Dists 2024) (People not required to turn over underlying documents of disciplinary proceedings for testifying officers not related to subject matter of the case); People v Earl, 84 Misc 3d 44, 47 (App Term 2d Dept, 2d, 11th, and 13th Jud. Dists 2024) (People not required to turn over arresting officer's underlying disciplinary [*9]records for substantiated claims from "long before the events underlying this case," as they did not relate to the subject matter of the case); People v Fuentes, 81 Misc 3d 136(A), *1-2 (App Term 2d Dept, 9th and 10th Jud Dists 2023) (only underlying records that are related to the subject matter of the case are required to be disclosed as part of automatic discovery, and the IAB files at issue, which "involved the officer's conduct in connection with a wholly unrelated case involving a different individual more than two years before defendant was charged" were not subject to automatic discovery). Nor do the People have to disclose "the entire disciplinary record for every law enforcement officer involved in the case." People v Macaluso, 230 AD3d 1158, 1160 (2d Dept 2024). Had the Legislature intended to afford wide-open disclosure of impeachment material pursuant to CPL § 245.20(1) it would have mandated that (see People v Lewis, 78 Misc 3d 877, 879-80 [Sup Ct, Kings County 2022]). In Lewis, the court found that the defendant did not "allege that any of the misconduct occurred during the investigation of [that] case or that any of the misconduct relate[d] to the charges against him or to any potential defense he might assert," and thus concluded that the People's disclosure, which consisted of summaries of unsubstantiated allegations and impeachment material already in the People's possession, was sufficient to comply with their obligation under section 245.20(1)(k). People v Lewis, 78 Misc 3d 877, 879-80 (Sup Ct, Kings County 2022). See also People v Masaquiza, Decision and Order, Docket No CR-031542-23NY (Crim Ct NY Co 2024) (McGrath, J) (citing People v. Sherman, 78 Misc 3d 975 (Dist Ct Suffolk Co 2023)) ("entire underlying [IAB] files need not be produced to satisfy the requirements of CPL article 245," the People must disclose sufficiently detailed information such that defendants can understand the nature and degree of the alleged misconduct).
Here, as in Lewis, defendant has failed to show that any of the alleged misconduct by law enforcement witnesses occurred during the investigation of this case or that it relates to the charges against him or to any potential defense he might assert. Rather, a review of the parties' papers demonstrates that none of defendant's claimed impeachment material relates to the subject matter of the case as they are about wholly inconsequential and unrelated matters. Accordingly, his claims are denied. See also Barrios, 82 Misc 3d at 613 ("that Garrett information is automatically discoverable in no way means that Article 245 requires the People to play Where's Waldo with every bit of anything potentially Garrett that could possibly exist for each and every law enforcement officer connected in even the most tangential of ways to the criminal matter."). This Court also notes that documents from unrelated civil lawsuits could not be utilized by defense counsel even if they were to receive it. People v Misciagna, Decision and Order, Docket No. CR-033247-23NY (Crim Ct. NY Co, 2024) (McDonnell, J) (holding that even if civil lawsuits "had not resulted in a settlement but had lead to a judgement against the officer at trial, the defendant would not be permitted to introduce the document at trial from those cases to controvert the witness's testimony as to that civil matter"). For all these reasons, defendant's claims in this regard are denied as meritless. Defendant's related claims are also denied for the foregoing reasons.
CCRB Records
Defendant's contention that he is entitled to CCRB records is meritless for the reasons noted above. In addition, the CCRB is not a law enforcement agency, and their materials are not considered to be in the possession or control of the District Attorney's Office. See People v Misciagna, Decision and Order, Docket No CR-033247-23NY (Crim Ct NY Co 2024) (McDonnell, J); People v Masaquiza, Decision and Order, Docket No CR-031542-23NY (Crim Ct NY Co 2024) (McGrath, J); People v Hidalgo, Decision and Order, Docket No CR- 0033261-[*10]23NY (Crim Ct NY Co 2025) (Haniff, J); People v Soto, 80 Misc 3d 473, 477 (Crim Ct NY Co 2023). Here, the People have already disclosed the CCRB materials that they have in their actual possession to defendant. Thus, defendant's claim is denied.
Accordingly, as to the aforementioned records, this Court finds that they are not subject to automatic discovery under the statute, and that defendant's claims as to these records are denied as meritless. Even if they do constitute automatic discovery under the statute, however, this Court would still decline to invalidate the People's initial COC, and subsequent SCOCs because as initially outlined above, "belated disclosures should not invalidate a [COC] that was made in good faith after the exercise of due diligence where the delay resulted from, for example, minor oversights in the production of material, delayed discovery of the existence of certain items, or a good faith position that the material in question was not discoverable." People v Perez, 73 Misc 3d 171, 176 (Sup Ct Queens Co 2021). People ex rel. Nieves obo Taipe v McGinley-Liddie, 2024 WL 4660126 (2d Dept November 4, 2024) (COC upheld where People disclosed additional materials after filing it); People v Pondexter, 76 Misc 3d 349, 356 (Crim Ct NY Co 2022) ("once alerted to the single missing document—which was of minimal importance—the People immediately sought and disclosed it and provided a reasonable explanation for its belated production"). Finally, defendant hasn't received "any evidence or information that he had not received or that he had received too late to use effectively." People v Elmore, 211 AD3d 1536 (4th Dept 2022) and is entirely unprejudiced as a result. For all these reasons, this Court finds that even if defendant's claims were not validly waived, and even if the materials determined supra as undiscoverable were, in fact, discoverable, that defendant's claims still fail and are properly denied. 
In sum, defendant's claims challenging the People's COC/SCOCs are waived as he failed to provide the People with "the specific and particularized" basis of his COC challenge, and failed to meaningful confer with the People to try to resolve all issues before resorting to motion practice. Defendant's motion is further denied, in any event, as meritless. After a thorough review of the moving papers, court file, COC, and supplemental COCs filed, the Court applied a "holistic assessment" of the People's efforts to comply with the discovery. The People have demonstrated that they acted in good faith and exercised due diligence by describing the detailed actions they took to comply with discovery obligations. They meaningfully addressed and delineated the items listed in the defendant's papers. For the aforementioned reasons, the Court finds that the People have in fact complied with their discovery obligations pursuant to CPL §245, and therefore, the COCs are valid. Accordingly, the defendant's motion to invalidate the People's COC filed on July 17, 2025 is denied. Defendant's remaining contentions are denied as meritless.
DEFENDANT'S MOTION TO DISMISS PURSUANT TO SPEEDY TRIAL
Defendant moves this Court to dismiss this action on the basis that he has been denied his right to a speedy trial, claiming that the People have exceeded their statutory speedy trial allowances under CPL § 30.30. In support of his claim, he argues that the People are attributable with well over their 90-day limit, and that the People — having repeatedly failed to validly declare their readiness on July 17, 2025 to the present — are attributable with 102 chargeable days, from the commencement of the criminal action on June 1, 2025, to September 11, 2025, the date of the instant motion. The People oppose, contending that they have not exceeded their statutory allowances and are within their 90-day window, with only 46 chargeable days.
To prevail on a motion to dismiss under CPL §30.30 (1)(a), a defendant must present sworn allegations of fact establishing an unexcused delay that exceeds the statutory limit. People [*11]v Allard, 28 NY3d 41 (2016); People v Cortes, 80 NY2d 201, 215-216 (1992); People v Santos, 68 NY2d 859, 861 (1986); People v Lomax, 50 NY2d 351, 357 (1980). At a minimum, the defendant must claim that the People failed to announce their readiness for trial within the statutorily prescribed period to meet their initial burden. People v Beasley, 16 NY3d 289, 292 (2011); People v Allard, 28 NY3d 41 41 (2016); People v Luperon, 85 NY2d 71 (1995). Once the defendant has asserted that more than the statutorily prescribed time period has elapsed since the commencement of a criminal action without a valid declaration of readiness from the People, the People bear the burden of establishing sufficient excludable delay. People v Berkowitz, 50 NY2d 333 (1980).
Pursuant to CPL §30.30(1)(b), the People must be ready for trial within "ninety days of the commencement of the criminal action" where a defendant is charged with "a misdemeanor punishable by a sentence of imprisonment of more than three months " See CPL §30.30(1)(b). Here, the criminal action commenced, on a misdemeanor with a sentence of imprisonment of more than three months, on June 1, 2025, where the accusatory instrument was filed and defendant arraigned the same day, so speedy trial began to run the same day with an allowable ninety-days.
At all times until the People announce that they are ready for trial, the People are chargeable with the time that elapses unless they can show that the specific delay is not chargeable to them pursuant to an exception enumerated in the statute. CPL §§ 30.30(1), (4); People v Torres, 205 AD3d 524, 525-26 (1st Dept 2022). Moreover, under the newly enacted discovery laws defined in CPL Article 245, the People's compliance with their discovery obligations is now a prerequisite to asserting trial readiness. See CPL §§ 245.50(3); 30.30(5). Specifically, CPL §245.50(3) states that "the prosecution shall not be deemed ready for trial for purposes of §30.30 of this chapter until it has filed a proper certificate pursuant to subdivision one of this section." CPL §30.30(5) provides that "[a]ny statement of trial readiness must be accompanied or preceded by a certification of good faith compliance with the disclosure requirements of section 245.20."
Once the People have met this statutory predicate by filing a proper COC, an accompanying statement of readiness is "presumed truthful and accurate and that a defendant who challenges such a statement must demonstrate that it is illusory" People v Brown, 28 NY3d 392 (2016). Thus, "[i]n the absence of proof that [a] readiness statement did not accurately reflect the People's position ..., the People [have] discharged their duty under CPL 30.30" People v Carter, 91 NY2d 795 (1998)).
The law distinguishes between delays occurring before the People have announced their readiness for trial from those that occur after the People have announced ready. People v Anderson, 66 NY2d 529, 534 (1985). While pre-readiness delays are excludable only if the People can establish that they fit within a category specifically excludable by statute, post-readiness delays are charged to the People only if they actually cause the People to become not ready for trial and are not specifically excludable by statute. People v Cortes, 80 NY2d 201, 210 (1992); Anderson, 66 NY2d at 534. And once in the post-readiness context of the case, the People will only be charged with delays that are attributable to their inaction and that directly implicate their ability to proceed to trial. People v Nielsen, 306 AD2d 500 (2d Dept 2003).
With respect to the post-readiness posture, the burden shifts to defendant to show that delays occurred under circumstances that should be charged to the People. Cortes, 80 NY2d at 215-16; Anderson, 66 NY2d at 541; People v Collins, 82 NY2d 177 (1993); see also CPL § 210.45(7). However, it is the prosecution's burden, in the first instance, to ensure the that the [*12]record of the proceedings with respect to adjournments is clear as to who is attributable with any delay to allow courts to make an informed decision on a 30.30 motion. Cortes, 80 NY2d at 215-16; People v Collins, 82 NY2d 177 (1993). In addition, the People are not required to declare their readiness repeatedly through the pendency of a criminal action. Cortes, 80 NY2d at 214.
Cognizant of all the relevant and applicable standards of law, and after reviewing the parties' submissions and their annexed exhibits, along with the court minutes, the Court's speedy trial computation and analysis is as follows:
The criminal action was commenced on June 1, 2025, upon the filing of the accusatory instrument, and defendant was arraigned on the same day. The People were not ready for trial and the case was adjourned for supporting deposition on July 21, 2025. The date of reckoning is excluded from the computations. People v Stiles, 70 NY2d 765 (1987).
In the interim, on July 17, 2025, the People filed and served a supporting deposition, valid COC, SOR, and ADF with the court and defendant off-calendar, bringing the case into the post-readiness context. See People v Stirrup, 91 NY2d 434 (1998). (46 days charged, 46 days total).
On July 21, 2025, the People were ready for trial in Part E and the complaint was deemed an information, but defendant was not ready for trial, and the case was adjourned to September 16, 2025, for trial. This period is excluded as an adjournment granted at the request of, or with the consent of, defense counsel. See CPL §30.30(4)(b). (0 days charged, 46 days total).
On September 11, 2025, defendant filed the instant motion, and the case was subsequently adjourned for decision on November 14, 2025. This period is excluded for defendant's motion practice. CPL §30.30(4)(a). (0 days charged, 46 days total).
In sum, the People are attributable with 46 days, well within their 90-day statutory allowances, and defendant's CPL §30.30 motion is denied without a hearing. And given that only 46 days are chargeable to the People, this Court similarly declines to address the parties' remaining contentions. Defendant's other motions in this branch are also denied for the foregoing reasons.
The foregoing constitutes the Opinion, Decision, and Order of the Court.
Dated: November 20, 2025
New York, New York
ELIZABETH Y. SHAMAHS, J.C.C.

Footnotes

Footnote 1:The original version of this Decision and Order inadvertently ended here, omitting the rest of this paragraph containing the line items from (5) — (20). The Court realized this error after the People notified the Court — with defense counsel on the same email — to inquire as to whether they had received the correct copy of the Decision as it appeared that the text was incomplete and cut off. The Court informed the parties that it was the correct copy, but the remainder of the paragraph had been omitted in error, and that an amended version would follow. This Amended Decision and Order has only been amended as noted above. The rest of the Decision and Order remains the same as the original version.

Footnote 2:This Court reviewed the hearing transcript in People v. Shaniece Ballard, Queens County Docket No. CR-002769-23QN, during which Ms. Allison Arenson, Executive Agency Counsel for the NYPD Legal Bureau's Body-Worn Camera Unit, testified about the nature and contents of body-worn camera audit trails and this Court additionally relies on the transcript, and the testimony therein.